COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JODY WAYNE FOX,                                          )

                                                                              )              No.  08-02-00160-CR

Appellant,                          )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )         
Criminal District Court #5

THE STATE OF TEXAS,                                     )

                                                                              )           
of Dallas County, Texas

Appellee.                           )

                                                                              )             
(TC# F-0115125-KL)

                                                                              )

 

 

O P I N I O N

 

Appellant Jody
Wayne Fox appeals his conviction for the offense of possession with intent to
deliver cocaine in an amount of four grams or more, but less than two hundred
grams.  The jury found Appellant guilty
of the charged offense and also found by special issue that Appellant used or
exhibited a deadly weapon:  a firearm
during the commission of the offense.  In
assessing punishment, the trial court found the enhancement paragraph in the indictment
to be true and sentenced Appellant to 20 years=
imprisonment.  On appeal, he raises three
issues, in which he challenges the factual sufficiency of the evidence to prove
he possessed cocaine with intent to deliver and the legal and factual
sufficiency of the evidence to support the jury=s
finding that he used or exhibited a deadly weapon.  We affirm.








On the evening of
July 18, 2001, Detective Gary Huddleston, a detective in the Narcotics Division
of the Balch Springs Police Department, and his
partner Sergeant B.W. Smith were conducting surveillance on room number six of
the Golden Motel, 2605 U.S. Highway 175 in Seagoville, Dallas County, planning
how to safely execute a search warrant at the location.  As they watched, they saw a female exit the
motel room and walk towards the motel office.  
Moments later, the Appellant left the motel room with trash in his
hands, and walked in the opposite direction towards the dumpster.  The officers decided to take advantage of the
opportunity to execute the search warrant while Appellant was outside the motel
room.  After dumping the trash, Appellant
started to walk back to his room, at which point the officers drove their
unmarked GMC pickup truck around and cut off Appellant=s
path.  Appellant was subdued in the
parking lot and handcuffed without incident.[1]  Back-up officers from the Seagoville Police
Department arrived minutes later. 
Appellant was placed in the back-up officers=
marked squad car and Detective Huddleston informed Appellant of his Miranda
rights after giving Appellant, who was screaming and very emotional, a few
minutes to cool down while sitting alone in the patrol car.  Detective Huddleston told Appellant that the
officers had a search warrant to search his place of residence for
narcotics.  Appellant=s initial reply was not admitted into
evidence.  Detective Huddleston testified
that Appellant then voluntarily told him that he had seen the officers parked
outside and had thrown a bag containing the narcotics behind the dresser when
he exited his motel room.  Detective
Huddleston relayed this information to the officers conducting the motel room
search.








The officers did
not have to use force to gain entry to the motel room.  However, a dresser had been placed against
the door, which made entry a little difficult. 
In Sergeant Smith=s
opinion, the dresser was used as a door barricade.  In searching the motel room, Sergeant Smith
observed a camcorder seated on the window ledge, facing out into the parking
lot.  Videotapes recovered from the room
showed footage of the parking lot area in front of the motel room, a view which
was consistent with where the camcorder was placed inside the room.  The officers recovered a loaded .38 revolver
handgun on a nightstand by the bed. 
There was a heavy, closed safe approximately two feet high, set on the
floor in the room.  The officers
recovered knives from the safe after Appellant provided the safe
combination.  Hand-held night optics were found on the floor at the foot of the bed.  The officers found a plastic bag on the
floor, which contained a postal scale, some clothes, and other items.  A small bag of marijuana was found on the
dresser.  Up against the wall between the
safe and the nightstand, officers found a loaded assault rifle.  The officers also recovered a substance,
later determined to be 6.49 grams of crack cocaine, including adulterants and dilutants, in the location where Detective Huddleston had
instructed them to look.

Standard
of Review








When reviewing the
legal sufficiency of the evidence, we review the evidence in the light most
favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex.Crim.App. 2001). 
We do not resolve any conflict of fact, weigh any evidence, nor do we
evaluate the credibility of any witnesses, as this was the function of the trier of fact.  See
Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992).  Our duty, rather, is to determine if the
explicit and implicit findings of the jury are rational by reviewing all the
evidence is the light most favorable to the verdict.  Id. at 421-22.  In so doing, we resolve any inconsistencies
in the evidence in favor of the verdict. 
Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).

In reviewing the
factual sufficiency of the evidence, we ask whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of
guilt is either so obviously weak as to undermine confidence in the jury=s determination or, although adequate
if taken alone, is greatly outweighed by contrary proof.  King v. State, 29
S.W.3d 556, 563 (Tex.Crim.App. 2000); Johnson v.
State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).  We examine the evidence that tends to prove
an elemental fact in dispute and compare it with the evidence that tends to
disprove that fact.  Jones v. State,
944 S.W.2d 642, 647 (Tex.Crim.App. 1996), cert.
denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d
54 (1997).  We will set aside a verdict
for factual insufficiency only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust.  Wardrip v. State, 56 S.W.3d 588, 591 (Tex.Crim.App.
2001).

Intent
to Deliver








In his first
issue, Appellant contends that the evidence was factually insufficient to prove
his intent to deliver the cocaine in his possession.  On appeal, Appellant argues that the evidence
presented was consistent with his personal use of cocaine, rather than an intent to deliver. 
Intent to deliver may be shown by circumstantial evidence.  Williams v. State,
902 S.W.2d 505, 507 (Tex.App.--Houston [1st Dist.] 1994,
pet. ref=d).  Expert testimony by experienced law
enforcement officers may be used to show an accused=s intent to deliver.  See Mack v. State,
859 S.W.2d 526, 529 (Tex.App.--Houston [1st Dist.]
1993, no pet.); Branch v. State, 833 S.W.2d 242, 244-45 (Tex.App.--Dallas 1992, pet. ref=d).  Factors considered in proving intent to
deliver include:  (1) the nature of the
location at which the defendant was arrested; (2) the quantity of the
controlled substance in the defendant=s
possession; (3) the manner of packaging; (4) the presence of drug paraphernalia
(for either drug use or sale); (5) the defendant=s
possession of large amounts of cash; and (6) the defendant=s status as a drug user.  Williams, 902 S.W.2d. at  507. 

At trial, Sergeant
Smith stated that the officers found no drugs on Appellant=s person.  Sergeant Smith further testified that the
officers found rolling papers for the marijuana, but did not find any drug
paraphernalia for use of crack cocaine nor did they find any individual plastic
bags in the motel room.  Based on
training and his experience, Sergeant Smith opined that the thirteen or so
crack cocaine rocks would probably sell for $25 to $30 a piece.  In his opinion, the amount of crack cocaine
recovered indicated that it was not for personal use, but rather indicated that
Appellant was a drug dealer.








Detective Anthony
Gipson, a narcotics detective with the Dallas Police Department, testified as
the State=s expert
witness regarding intent to deliver in narcotics cases in Dallas County.  Detective Gipson testified that the average
user of crack cocaine would usually smoke approximately one-tenth of a gram at
a time.  This single Ause@
has a street value of $10 on the streets of Dallas County.  The size of the crack
cocaine rocks in this case were larger than an individual would use for
a single use.  Detective Gipson estimated
that they were $50 pieces of crack cocaine, with each individual piece
containing roughly six single uses. 
Based on his familiarity with how drug dealers keep and package crack
cocaine for sale, Detective Gipson stated that about fifty percent of drug
dealers sell their cocaine in individual baggies, while the other fifty percent
sell it loose.  Detective Gipson examined
the crude gram scale recovered from Appellant=s
motel room and testified that such scales are frequently used by drug
dealers.  According to Detective Gipson,
a person purchasing drugs would not usually have a scale.  A scale comes into play when an individual is
planning to resell cocaine and is trying to sell uniform sizes.

In Detective
Gipson=s
opinion, 6.49 grams of crack cocaine is approximately 65 individual uses.  This amount is more than any individual user
would have for their personal use, but it would not be an uncommon amount for a
lower-level dealer.  According to
Detective Gipson, 6.49 grams of crack cocaine would be more than individual
usage for two people and it was highly unlikely that a couple would have that
much crack cocaine for their personal use.

Detective Gipson
further testified that the presence of two loaded weapons and scales was
consistent with a location that is set up for the sale of narcotics.  He also stated that it was very common to
find surveillance equipment in drug sales locations.  The presence of night vision goggles at the
location bolstered Detective Gipson=s
opinion that drug sales occurred at the location.  Based on all the evidence recovered in this
case, it was Detective Gipson=s
expert opinion that Appellant possessed the narcotics with the intent to sell
them and not for personal use.








Detective Gipson=s testimony clearly indicated that
possession of 6.49 grams of crack cocaine in large uniform pieces, with
measuring scales, was consistent with its possession with an
intent to deliver.  Moreover, the
officers recovered no drug paraphernalia for the use of crack cocaine in their
motel room search.  The quantity of crack
cocaine indicated to both Detective Gipson and Sergeant Smith that Appellant
was a drug dealer, rather than his possession of the narcotics for personal
use.  Appellant offered no contrary
evidence at the guilt-innocence phase of trial. 
Viewing all the evidence in a neutral light, we find that the evidence
of Appellant=s intent
to deliver is not so obviously weak as to undermine confidence in the jury=s determination nor was the jury=s verdict so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Finding the evidence factually sufficient to
support the jury=s finding
of possession of cocaine with intent to deliver, we overrule Issue One. 

Deadly
Weapon Finding 

In Issues Two and
Three, Appellant argues that the evidence was legally and factually
insufficient to support the jury=s
affirmative finding that he used or exhibited a deadly weapon, to wit:  a firearm. 
See Tex.Code Crim.Proc.Ann.
art. 42.12, '
3g (Vernon Supp. 2003).  In
determining the legal sufficiency of the jury=s
deadly weapon finding, this Court must determine whether a rational trier of fact could have found beyond a reasonable doubt
that the mere possession of firearms facilitated the associated felony.  Gale v. State, 998
S.W.2d 221, 224 (Tex.Crim.App. 1999).  The Ause@ of a deadly weapon during the
commission of a felony offense extends to any employment of a deadly weapon,
including its simple possession, if such possession facilitated the associated
felony.  Patterson
v. State, 769 S.W.2d 938, 941 (Tex.Crim.App.
1989).








In the present
case, a loaded .38 revolver handgun and a loaded assault rifle were located in
plain view near the nightstand by the bed. 
According to Detective Huddleston=s
testimony, when Appellant exited his motel room, he purposely threw the bag
containing the crack cocaine behind the dresser.  Sergeant Smith testified that the motel room
was fairly small.  Detective Gipson, as
the State=s expert
witness, testified that it was common for drug dealers to arm themselves to
protect against robberies, especially in drug locations doing a lot of sales to
people who are addicted to crack cocaine. 
Prior to exiting the motel room, Appellant would have had convenient
access to the loaded weapons while in close proximity to the contraband.  Based on the evidence presented at trial, we
conclude a rational jury could have found beyond a reasonable doubt that Appellant
Aused@
a deadly weapon during the commission of the offense of possession of cocaine
with intent to deliver.  We overrule
Appellant=s second
issue.  

In Appellant=s third issue, he contends that the
evidence is factually insufficient to support the jury=s
affirmative deadly weapon finding. 
Specifically, Appellant asserts that although he did not testify during
the guilt-innocence phase of the trial, he presented a plausible and largely unrefuted explanation of why he possessed weapons in his
motel room in his testimony during the punishment phase of trial.  However, Appellant presented no contrary
evidence during the innocent-guilt phase of trial before the jury.  Applying the appropriate standard of review
for factual sufficiency challenges, we find that the evidence is not so obviously
weak as to undermine confidence in the jury=s
determination nor was the jury=s
verdict overwhelmingly outweighed by contrary evidence as to be clearly wrong
and unjust.  See Johnson, 23 S.W.3d at 11.  We
overrule Issue Three.

We affirm the
trial court=s
judgment.

 

October
2, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Sergeant Smith apprehended the female, who was about two doors down from the
motel room and she complied with his instruction to lie on the ground.  She was handcuffed and waited outside,
sitting on the curb in front of the motel on the sidewalk during the
incident.  After questioning, she was
released without arrest.