IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,059






BOBBY JAMES MOORE, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM HARRIS COUNTY






 JOHNSON, J., delivered the opinion of the Court in which MEYERS, PRICE,
WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. KELLER,
P.J., concurred in the result.


O P I N I O N



 In July of 1980, appellant was convicted of capital murder, alleged to have been committed in April
1980 during a robbery, and was sentenced to death. Tex. Penal Code Ann. § 19.03(a). Appellant's
conviction and sentence were originally affirmed by this Court. Moore v. State, 700 S.W.2d 193 (Tex.
Crim. App. 1985), cert. denied, 474 U.S. 1113 (1986). Appellant then filed an application for writ of
habeas corpus in federal court. The United States Court of Appeals for the Fifth Circuit affirmed the
United States District Court's grant of habeas corpus relief, as to punishment only, based upon trial
counsel's constitutionally deficient performance, which prejudiced the outcome of the punishment phase.
Moore v. Johnson, 194 F.3d 586, 622 (5th Cir. 1999). In February 2001, the trial court held a new
punishment hearing and, pursuant to the jury's answers to the special issues set forth in Texas Code of
Criminal Procedure Article 37.0711, §§ 3(b) and 3(e), sentenced appellant to death. Art. 37.0711 §
3(g). (1) Direct appeal to this Court is automatic. Art. 37.0711, § 3(j). Appellant raises twenty-one points
of error pertaining to his latest punishment hearing. (2) We affirm.

 In his third point of error, appellant claims that the evidence is factually insufficient to support the
jury's finding that he caused the victim's death "deliberately" in terms of the first special issue. Special issue
number one asks "whether the conduct of the defendant that caused the death of the deceased was
committed deliberately and with the reasonable expectation that the death of the deceased or another would
result." Art. 37.0711, § 3(b)(1).

 In Wardrip v. State, 56 S.W.3d 588, 591 (Tex. Crim. App. 2001), we held that the
deliberateness special issue may be reviewed for factual sufficiency using the Clewis standard. When
reviewing the factual sufficiency of the evidence, this Court views "all the evidence without the prism of 'in
the light most favorable to the verdict' and set[s] aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust." Id.; Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996).

 Before answering "yes" to the deliberateness special issue, the jury must find "a moment of
deliberation and the determination on the part of the actor to kill[.]" Kinnamon v. State, 791 S.W.2d 84,
95-96 (Tex. Crim. App. 1990), overruled on other grounds, Cook v. State, 884 S.W.2d 485, 491
(Tex. Crim. App. 1994), quoting Cannon v. State, 691 S.W.2d 664, 677 (Tex. Crim. App. 1985), cert.
denied, 474 U.S. 1110 (1986). An act does not have to be premeditated in order to be deliberate.
Granviel v. State, 552 S.W.2d 107, 122-23 (Tex. Crim. App. 1976), cert. denied, 431 U.S. 933
(1977). Furthermore, this Court has held that the fact that a defendant arrived at a crime scene armed has
probative value in determining whether the conduct was deliberate. Cooks v. State, 844 S.W.2d 697, 714
(Tex. Crim. App. 1992), cert. denied, 509 U.S. 927 (1993).

 The record reflects that on April 25, 1980, appellant and two accomplices, Anthony Pradia and
Willie Koonce, drove around looking for a place to commit a robbery. They came upon the Birdsall Super
Market and Pradia went inside the store to "check it out." After Pradia reported seeing an elderly man and
woman in the courtesy booth, and a pregnant woman at the registers, they decided that the store would
be a good choice and subsequently discussed their respective roles in the robbery. Appellant carried a
shotgun, while Pradia carried a pistol. The three men entered the store.

 Appellant and Koonce walked up to the courtesy booth. Koonce entered the booth and told
James McCarble and Edna Scott, who were working inside the booth, that they were being robbed and
demanded money. According to several witnesses, appellant lifted his shotgun to his shoulder and pointed
it at McCarble and Scott through the courtesy booth window. When Scott yelled out, appellant pointed
the gun at McCarble, looked down the barrel while raised on his toes, and shot McCarble in the head. 
Arthur Moreno, who was working as a stocker in the store at the time of the robbery, testified that when
appellant shot McCarble, McCarble's hands were in the air and McCarble made no sudden moves before
he was shot. However, appellant points out that, at the first trial in 1980, Moreno did not testify about
McCarble's hands being in the air. He suggests that Moreno's testimony in the instant trial should not be
accorded any weight because such variance makes it unreliable.

 Appellant also argues that the gun discharged accidentally. He points out that, in his written
statement, he indicated that in the midst of the screaming and panic during the course of the robbery, he
"suddenly fell backwards and the butt of the gun hit [his] arm and the gun went off." He learned only later
that the man had been shot. In his statement, appellant insisted, "I swear I was not trying to kill the old man
and the whole thing was a [sic] accident." In contrast, C.E. Anderson, a Houston police officer and the
firearms expert who tested appellant's shotgun, testified that the gun was functional and in good working
order. Anderson related that he tested the trigger of the right barrel of appellant's gun ten times and that
it required between three and one half and four pounds of pull before it would fire. He also testified that
he determined that the left barrel trigger was much stiffer, requiring between eight and nine pounds of pull. 
He concluded that the right barrel had fired the spent shotgun hull that had been submitted to him in this
case. He explained that a gun trigger requiring such force could not be pulled easily and would have to be
done deliberately. Anderson also stated he experimented with dropping the gun, banging it around, or
bumping it into things to determine whether it would accidentally discharge, and he found that it did not. 
He indicated that the trigger pulls were within safety tolerances and that the gun would not go off
accidentally, i.e. that one would have to pull the trigger in order to shoot somebody.

 In light of the evidence of appellant's actions and testimony that the gun could not have discharged
accidentally, the evidence is factually sufficient to show appellant caused McCarble's death deliberately
and therefore, the jury's verdict in answering the first special issue was not so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Appellant's third point of error is overruled.

 In his first point of error, appellant contends that the evidence is legally insufficient to support the
jury's finding that he would be a continuing threat to society. (3) In reviewing the legal sufficiency of the
evidence at punishment, this Court looks at the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have concluded beyond a reasonable doubt that appellant
would probably commit criminal acts of violence that would constitute a continuing threat to society.
Jackson v. Virginia, 443 U.S. 307 (1979); Allridge v. State, 850 S.W.2d 471 (Tex. Crim. App. 1991),
cert. denied, 510 U.S. 831 (1993).

 "A jury is permitted to consider a variety of factors when determining whether a defendant will pose
a continuing threat to society." Wardrip v. State, 56 S.W.3d 588, 594 (Tex. Crim. App. 2001). In
determining whether a defendant will pose such a continuing threat, a jury is permitted to consider a variety
of factors, including, but not limited to: 1) the circumstances of the offense, including the defendant's state
of mind and whether he was acting alone or with others; 2) the calculated nature of the defendant's actions;
3) the forethought and deliberateness shown by the crime's execution; 4) the existence of a prior criminal
record and the severity of the prior crimes; 5) the defendant's age and personal circumstances at the time
of the offense; 6) whether the defendant was acting under duress or the domination of another at the time
of the offense; 7) psychiatric evidence; and 8) character evidence. Id.; and Keeton v. State, 724 S.W.2d
58, 61 (Tex. Crim. App. 1987). Appellant emphasizes and urges this Court "to recognize and give effect
to his 21 years of good conduct in prison" in our review of the continuing threat special issue.

 During appellant's retrial on punishment, the jury heard the facts of the capital murder in this case
as detailed above in point of error three. In addition, the jury heard evidence that appellant had committed
two other grocery store robberies on April 11, 1980, and April 18, 1980, just days before McCarble's
murder. There was testimony that in each instance, appellant was armed with a shotgun and aimed it at a
person inside the store.

 The state also presented appellant's pen packet, which revealed that he had four prior felony
convictions. Appellant had been convicted of three burglaries of a habitation which were committed on
December 25, 1976; January 19, 1977; and February 2, 1977. He had also been convicted of aggravated
robbery committed on December 20, 1976. Finally, the state offered into evidence appellant's disciplinary
reports from the Texas Department of Criminal Justice which showed that he had numerous disciplinary
violations, including refusing to obey orders, challenging a guard, collecting a large quantity of pills without
authorization, and possession of two altered electric cords.

 The facts of the instant case and appellant's history, including the commission of multiple aggravated
armed robberies and prison disciplinary violations, permit a rational juror to conclude that appellant would
continue to be a threat to society. Accordingly, we hold the evidence legally sufficient to support the jury's
affirmative answer to the future dangerousness issue. Jackson, 443 U.S. 307; Allridge, 850 S.W.2d at
489. Appellant's first point of error is overruled.

 In his second point of error, appellant argues that the evidence is factually insufficient to support
the jury's finding that he would be a continuing threat to society. We have repeatedly declined to conduct
a factual sufficiency review of the future dangerousness special issue and decline to do so today. 
Chamberlain v. State, 998 S.W.2d 230, 233 (Tex. Crim. App. 1999), cert. denied, 528 U.S. 1082
(2000); McGinn v. State, 961 S.W.2d 161, 169 (Tex. Crim. App.), cert. denied, 525 U.S. 967 (1998). 
Appellant's second point of error is overruled.

 In his tenth point of error, appellant claims that the trial court erred in refusing his request for a
charge on the presumption that lost or destroyed evidence would be unfavorable to the state. Specifically,
he asserts that the destruction of the shotgun he used in the commission of the robbery and murder in this
case significantly prejudiced him with respect to the issue of deliberateness.

 The record reflects that the shotgun was seized and submitted to the Houston Police Department
Identification Division latent-print lab on April 25, 1980. After tests were conducted, the gun was admitted
into evidence at appellant's 1980 trial. Subsequently, it was stored in the storage room in the trial judge's
chambers.

 In April 1981, the trial judge's chambers were burglarized. The shotgun was not taken, but during
the investigation of the burglary, the police removed the shotgun from the storage room and processed it
for fingerprints. Then, as a matter of standard procedure, the shotgun was taken and stored in the Sheriff's
property room. Nine years later, the Sheriff's Department developed a computerized inventory system. 
The wrong code was inadvertently entered for the shotgun, and it was mistakenly labeled "unknown
property."

 For the next ten years, the shotgun remained in the Sheriff's property room. The Sheriff's
department had a standard procedure whereby "unknown property" would be ordered disposed of or
destroyed after ten years. As a result, the shotgun was destroyed pursuant to a court order in April 1991.

 During the retrial on punishment, appellant requested a jury charge on the spoliation or destruction
of the gun. He claimed that the fact the shotgun was lost by the state should be construed in appellant's
favor in regards to the first special issue of deliberateness because he claimed the gun discharged
accidentally and was no longer available to be tested. The trial court denied appellant's request. Appellant
asserts that the trial court erred by not including the following instruction in the jury charge:

 You are instructed that where evidence such as the weapon used in the offense was within
the exclusive control of the State or its agents and the State has failed to produce that
evidence, you must presume that the destroyed evidence, if offered, would have been
unfavorable to the State's position.

 Any federal constitutional duty to preserve evidence is limited to evidence that might be expected
to play a significant role in the suspect's defense. California v. Trombetta, 467 U.S. 479, 488 (1984). 
"To meet this standard of constitutional materiality, [citation omitted], evidence must both possess an
exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the
defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at
489. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve
potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood,
488 U.S. 51, 58 (1988).

 In this case, the record does not reveal that the shotgun possessed exculpatory value to appellant
before it was destroyed. Nor does it reveal any showing of bad faith on the part of the police in the
destruction of the shotgun. In fact, at trial during discussions about the shotgun, defense counsel explicitly
stated, "I certainly don't see any bad faith on the part of the State[,]" "I actually don't think there's any bad
faith on the part of these prosecutors regarding the gun[,]" and "I don't think we have evidence of bad
faith." Accordingly, the trial court did not err in refusing appellant's requested charge. Appellant's tenth
point of error is overruled.

 In his fourth point of error, appellant contends that Rule of Evidence 606(b) is unconstitutional
because it precluded him from admitting inadmissible evidence at the motion for new trial hearing. 
Appellant does not explain how the enactment of a rule of evidence preventing the admission of
inadmissible evidence violates the United States Constitution. As such, his point of error is inadequately
briefed. Tex. R. App. P. 38.1(h). Additionally, we observe that appellant's motion failed to assert that
Rule 606(b) was unconstitutional, and his argument before the trial court likewise failed to raise such claim. 
Rather, appellant objected to the invocation of Rule 606(b) to prevent the jurors' testimony, argued that
the rule should not be used, and asked the trial court not to apply it; he did not challenge the rule's
constitutionality. Appellant's failure to make a timely specific objection before the trial court raising this
constitutional claim waives such claim. Curry v. State, 910 S.W. 490, 496 (Tex. Crim. App. 1995);
Garcia v. State, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994), cert. denied, 514 U.S. 1005 (1995)
and Tex. R. App. P. 33.1(a). Appellant's fourth point of error is overruled.

 In his fifth point of error, appellant alleges that the death penalty statute violates the Eighth
Amendment to the United States Constitution and Article I, § 13 of the Texas Constitution because it fails
to provide for a sentence of life without parole. With respect to the Eighth Amendment, we have rejected
this identical claim. Arnold v. State, 873 S.W.2d 27, 39-40 (Tex. Crim. App. 1993), cert. denied, 513
U.S. 830 (1994). Appellant fails to provide any distinguishing argument or authority for his Texas
constitutional claim, and it is accordingly dismissed as inadequately briefed. Tex. R. App. P. 38.1(h). 
Appellant's fifth point of error is overruled.

 In his sixth point of error, appellant claims that the future dangerousness special issue was
unconstitutional because it was not susceptible to proof beyond a reasonable doubt and the jury could not
fairly apply the rule for decision (proof beyond a reasonable doubt) in the context of the punishment
question. In other words, appellant argues that, in the capital punishment context, jurors require an
appellant to prove that he is not a future danger under a tougher standard than proof beyond a reasonable
doubt because they will tolerate virtually no risk in assessing future danger.

 The jury was properly instructed on the burden of proof beyond a reasonable doubt. We presume
the jury follows the trial court's instructions. Resendiz v. State, 112 S.W.3d 541, 546 (Tex. Crim. App.
2003); Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Appellant presents no evidence
to rebut this presumption. Appellant's sixth point of error is overruled.

 In his seventh point of error, appellant argues that the trial court erred by denying his request to
expand the definition of a mitigating circumstance in the jury charge. Appellant asked that in addition to
his character, background, and the circumstances of the crime, the jury be instructed that they could also
consider his record, emotional instability, and intelligence as mitigation evidence. The trial court gave the
jury the instruction required by Article 37.011, § 3(e). Because appellant received the proper instruction,
the trial court did not err in denying appellant's request. Moreover, the items mentioned within the request
may be construed as character and background evidence in terms of the statute. Art. 37.011 § 3(e). 
Appellant's seventh point of error is overruled.

 In his eighth point of error, appellant argues that he was denied his right of allocution. Allocution
is a defendant's right to make a statement immediately before sentence is pronounced. Art. 42.07, see also
Black's Law Dictionary 100 (4th Ed. Rev. 1968). The record reflects that appellant was given this
opportunity at trial.

 Although he characterizes his claim as a denial of allocution, appellant is actually claiming that the
trial court erred in denying his request to make a personal statement of remorse and apology, relating to
how remorseful he was for killing McCarble, before the jury deliberated, without being subject to cross-examination. Appellant "does not possess a constitutional right to make an unsworn statement of remorse
before the jury that is not subject to cross-examination." United States v. Hall, 152 F.3d 381, 396 (5th
Cir. 1998), cert. denied, 526 U.S. 1117 (1999). Therefore, the trial court did not err in denying
appellant's request. Appellant's eighth point of error is overruled.

 In his ninth point of error, appellant contends that the trial court erred in refusing his request that
a residual-doubt instruction be included in the jury charge. The United States Supreme Court has held that
there is no constitutional right to have jurors' residual doubts about the defendant's guilt be considered as
a mitigating factor during deliberations in a capital murder case. Franklin v. Lynaugh, 487 U.S. 164, 174
(1988). Further, there is no constitutional right to a jury instruction regarding residual doubt. Id. at 174-75. 
Accordingly, the trial court did not err in denying appellant's request for a residual-doubt instruction. 
Appellant's ninth point of error is overruled.

 In his eleventh point of error, appellant alleges that the trial court erred in denying his request for
an instruction telling the jurors that the state has the burden of proof to show appellant committed an
unadjudicated offense beyond a reasonable doubt before they could consider it in terms of future
dangerousness. We have consistently held that so long as the jury has been properly instructed on the
burden of proof with regard to the special issues, the trial court does not err in failing to submit a separate
instruction on the burden of proof for extraneous offenses. Ladd v. State, 3 S.W.3d 547, 574-75 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1070 (2000). The trial court did not err in denying appellant's
requested instruction because the jury was properly instructed as to the burden of proof with regard to the
special issues. Appellant's eleventh point of error is overruled.

 In his seventeenth point of error, appellant claims that the trial court erred in overruling his objection
to the prosecutor's closing argument in which the state asked the jury to return a death sentence as a
deterrent to others' future commission of capital crimes. Specifically, the prosecutor argued:

 This case really ... is about saving lives ... . By your verdict you can tell every would-be
killer out there on the street . . . if you gun down innocent victims you're going to pay for
it, that Harris County isn't going to stand for it, won't tolerate it one [sic] more, you are
not going to murder people.



 * * *


 I submit this case is about saving lives, protecting innocent victims, people with their hands
up. Think about all the people in our society that have to earn their living behind a counter. 
They are in grocery stores[,] ... convenience stores[,] ... laundries[,] Luby's, all the people
that have to work every day behind the counter, you've got to protect those people from
guys like him that don't want to leave any witnesses. . . .


 You must protect innocent victims from people like Bobby Moore. You cannot allow
them to gun people down. It is a death warrant for people who are standing there terrified
trying to remember their faces, trying to just make it through the day.... You cannot
tolerate that. You cannot allow that. Just think what the criminals will think. Golly, look
what Moore did.


 The proper areas of jury argument are: (1) summation of the evidence, (2) reasonable deduction
from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. 
Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 (2001). 
Here, the state's closing argument was a proper plea for law enforcement. The state may argue the
relationship between the jury's verdict and the deterrence of crime, that the jury should deter specific
crimes by its verdict, and the impact of the jury's verdict on the community. Borjan v. State, 787 S.W.2d
53, 55-56 (Tex. Crim. App. 1990). The state's jury argument did so. See, e.g., Goocher v. State, 633
S.W. 2d 860, 864 (Tex. Crim. App.), appeal dism'd, 459 U.S. 807 (1982). Therefore, the trial court
did not err in overruling appellant's objection to the state's jury argument. Appellant's seventeenth point
of error is overruled.

 In his twelfth point of error, appellant argues that the trial court erred in excluding the testimony of
Joanne Cross. Joanne's mother, Barbara Cross, was a member of "Lifelines," a group that corresponded
with death-row inmates. Barbara began corresponding with appellant in 1990 and continued until her death
in 1996. The defense called Joanne to testify at punishment about her mother's relationship with appellant,
and specifically, to discuss the content of the letters sent between her mother and appellant. The state
objected that the content of the letters was hearsay. The trial court sustained the state's objection and
excluded the letters. When defense counsel attempted to question Joanne about her mother's background
and information beyond her personal knowledge, the state objected to the relevance of this information. 
The trial court sustained the objection and excluded that portion of Joanne's testimony. Defense counsel
made a bill of exception containing the letters and testimony from Joanne regarding Barbara's feelings
towards appellant and his circumstances. Joanne was then allowed to testify in front of the jury that her
mother began corresponding with appellant in 1990; that appellant sent her mother items he made in prison;
that when Joanne's mother passed away, appellant sent her a letter of sympathy; that appellant's grammar,
spelling, and writing style improved over the years; and that appellant understands issues in culture and
politics.

 When a trial court excludes evidence, part of which is admissible and part of which is not, the party
on the adverse side of the ruling must separate the admissible evidence from the inadmissible evidence and
state the reason for its admissibility. Jones v. State, 843 S.W.2d 487, 492-93 (Tex. Crim. App. 1992),
overruled on other grounds, Maxwell v. State, 48 S.W.3d 196 (Tex. Crim. App. 2001). Portions of
the bill of exception were admissible and some were admitted. However, when Joanne's testimony and
the letters were excluded, appellant made no attempt to separate any of the admissible evidence from the
inadmissible evidence and did not provide an argument for the admissibility of any of the evidence contained
in the bill. For this reason, the trial court was within its discretion to disallow all of the evidence contained
in the bill. Id. Appellant's twelfth point of error is overruled.

 In his thirteenth point of error, appellant contends that the trial court erred in admitting victim-impact
evidence in violation of the constitutional prohibition against the creation of ex post facto laws and in
violation of his Sixth Amendment right to effective assistance of counsel. He claims that the testimony of
the victim's daughter, Carolyn Plessner, should not have been admitted because it was inadmissible at the
time of his first trial. He claims further that, in order for him to prevent the admission of victim-impact
testimony, appellant would be required to waive the mitigation special issue, and to do so would deprive
him of the effective assistance of counsel.

 An ex post facto law is one that (1) punishes as a crime an act previously committed which was
innocent when done; (2) changes the punishment and inflicts greater punishment than the law prescribed
when the offense was committed; (3) deprives a person charged with a crime of a defense that was
available at the time the act was committed; or (4) alters the legal rules of evidence and requires less or
different evidence than the law required at the time of the commission of the offense. Carmell v. Texas,
529 U.S. 513, 522 (2000). Appellant claims the fourth category applies. We disagree. Victim-impact
testimony is not and has never been required in a capital murder trial.

 With respect to appellant's contention that he would be required to waive the mitigation special
issue in order to prevent victim impact testimony, and his claim that to do so would deprive him of the
effective assistance of counsel, we need not address these issues. Counsel did not waive the mitigation
issue. We will not address hypothetical arguments. Tex. R. App. P. 38.1. Appellant's thirteenth point of
error is overruled.

 In his sixteenth point of error, appellant contends that the trial court denied him due process of law
in refusing to grant a mistrial when the state asked a witness to an extraneous offense whether she had seen
one of appellant's accomplices outside the courtroom.

 The state called Stella Gaddy to testify about a robbery committed by appellant and an accomplice
one week before McCarble's murder. Prior to trial, the defense was granted a motion in limine which
required the prosecutor to approach the bench before eliciting testimony about extraneous offenses. The
prosecutor complied with the order, and Gaddy testified outside the presence of the jury that on April 18,
1980, appellant and an accomplice entered the Minimax grocery store where she was employed as a
cashier. Appellant held a shotgun to her back while his accomplice pointed a pistol at her and demanded
money. She testified that she stepped back and gave them the money. The trial court determined Gaddy's
testimony was admissible and Gaddy testified to these facts in front of the jury. After her summary of the
crime was entered into evidence, the prosecutor asked the following:

 THE PROSECUTOR: Today in the hallway have you seen one of the other robbers here today?


 GADDY: Yes.


 THE PROSECUTOR: Been out there in the hallway?


 GADDY: Yes. When I went to drink water.

 Gaddy was referring to Everett Pradia, appellant's accomplice. At this point, the defense asked
the court to approach the bench and objected that the state surprised the defense with this testimony, that
the questions were meant to inflame the jury, and that the questions elicited victim impact testimony because
Gaddy became upset when referring to Pradia some twenty-one years after the robbery. The trial court
sustained appellant's objection and gave the jury the following instruction to disregard:

 THE COURT: Ladies and gentlemen, the Court needs to and does instruct you to
disregard that last question by the district attorney and the last answer by
the witness. And if you don't remember it, don't ask. But if you do
remember it, you're to disregard it. All right.


Appellant requested a mistrial, which was denied.

 A mistrial is granted only in extreme circumstances, such as when the evidence presented is so
inflammatory as to unfairly prejudice the defendant and render a fair trial impossible. Ladd v. State, 3
S.W.3d at 567. Generally, an instruction to disregard cures error concerning improper remarks and is the
proper relief when inadmissible remarks are elicited. Stoker v. State, 788 S.W.2d 1, 13 (Tex. Crim. App.
1989), cert. denied, 498 U.S. 951 (1990); Woods v. State, 653 S.W.2d 1, 5 (Tex. Crim. App. 1983)
(op. on reh'g.). We presume the jury follows the court's instructions. Colburn v. State, 966 S.W.2d at
520. Gaddy's testimony was not so inflammatory as to render a fair trial impossible, and there is no
evidence to suggest that the jury in this case did not follow the court's instruction to disregard. Appellant's
sixteenth point of error is overruled.

 In his eighteenth point of error, appellant claims that, under Mosley v. State, 983 S.W.2d 249
(1998), cert. denied, 526 U.S. 1070 (1999), and Apprendi v. New Jersey, 530 U.S. 466 (2000), the
mitigation special issue is infirm under the Eighth Amendment to the United States Constitution because it
omits a burden of proof. In point of error nineteen, he claims that, after Mosley, the mitigation special issue
is infirm under the Eighth Amendment because it makes impossible any meaningful appellate review of the
jury's determination. In point of error twenty, appellant claims that Article 44.251 (requiring appellate
review of sufficiency of all capital punishment issues) when interpreted in conjunction with Article 37.071,
§ 2(e) (placing no burden of proof in the mitigation special issue) is infirm under the Eighth Amendment.

 We have addressed and rejected the claim that the mitigation special issue is infirm as a matter of
federal constitutional law because it omits a burden of proof. Jackson v. State, 33 S.W.3d 828, 840-41
(Tex. Crim. App. 2000), cert. denied, 532 U.S. 1068 (2001). We have also addressed and rejected the
claim that the mitigation special issue violates the Eighth Amendment on the ground that meaningful appellate
review of the jury's determination is impossible. Prystash v. State, 3 S.W.3d 522, 535-36 (Tex. Crim.
App. 1999), cert. denied, 529 U.S. 1102 (2000).

 Appellant argues that the absence of a burden of proof is also a problem under the United States
Supreme Court's opinion in Apprendi. In Apprendi, the Supreme Court held that sentence enhancements
based on judicial fact findings violated due process. The Apprendi Court held, "Other than the fact of a
prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum
must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. 
Appellant contends that Apprendi requires the state to bear the burden to prove beyond a reasonable
doubt that the mitigation issue should be answered in the negative. Appellant reads Apprendi too broadly.

 Apprendi applies to facts that increase the penalty beyond the "prescribed statutory maximum." 
Under Article 37.071, the statutory maximum is fixed at death. There are no statutory enhancements. A
positive jury finding on the mitigation issue does not have the potential of increasing the penalty; rather, it
has the potential for reducing a defendant's sentence. Further, with respect to appellant's claim the state
should bear the burden of proof as to mitigation, Apprendi does not address this burden.

 As to point of error twenty, we have rejected identical claims and decline to revisit the issue. Tong
v. State, 25 S.W.3d 707, 715 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 1053 (2001). Appellant's
eighteenth, nineteenth, and twentieth points of error are overruled.

 In his twenty-first point of error, appellant claims that executing him after twenty-two years on death
row would constitute cruel and unusual punishment pursuant to the United States and Texas Constitutions. 
Appellant filed a motion for new trial alleging his execution would violate the United States Constitution,
but did not allege it would violate the Texas Constitution. As such, he has failed to preserve error for our
review of his Texas Constitutional claim. Tex. R. App. P. 33.1.

 Appellant gives a lengthy description of his life on death row and the mental anguish he has suffered. 
However, none of this evidence was submitted at trial. Therefore, we will not consider it. Tex. R. App.
P. 38.1(h).

 With respect to appellant's contention that executing him after twenty-two years on death row
would be cruel and unusual punishment under the United States Constitution, this Court has rejected such
claims. In Bell v. State, 938 S.W.2d 35 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 827 (1997),
Bell had been on death row for approximately twenty years. We held that, because he was unable to show
the state was responsible for the delay between the time he was sentenced and his execution date, it was
not unconstitutional to execute him. Id. at 53. Rather, we held that the delay was necessary to ensure his
conviction and sentence were proper. Id. We further rejected appellant's argument in Bell because:If this Court were to hold that executing an inmate after a threshold amount of time on
death row would per se violate the Eighth Amendment, such a holding would undoubtedly
encourage inmates to delay their appeals as much as possible. Even assuming the torturous
effects of appellate delay, the hope of a life sentence coupled with the torturous anxiety of
waiting would arguably be preferable to a certain death. We refuse to encourage inmates
to prolong their appeals on hope that they could receive a life sentence if they keep their
appeals alive for a certain number of years. The arbitrary results that would follow such
tactics, as well as the difficulties in discerning a threshold period of time, compound the
problematic nature of appellant's claim.


Id. Appellant's twenty-first point of error is overruled.

 Appellant's fourteenth and fifteenth points of error are not contained within his 128-page brief. 
Rather, they are attached as part of the twenty-page appendix. Appellant filed a motion to extend the 125-page limit for his brief. See Tex. R. App. P. 71.3. We denied the motion. Appellant cannot circumvent
Rule 71.3 and this Court's order by attaching points of error in an appendix. We will not consider
appellant's fourteenth and fifteenth points of error because they are not properly before us. Tex. R. App.
P. 38.1 & 71.3.

 We affirm the judgment of the trial court.

 Johnson, J.

Delivered: January 14, 2004

En banc

Do not publish
1. Unless otherwise indicated this and all future references to articles refer to the Texas Code of Criminal
Procedure.
2. We have also received a pro se supplemental brief in which appellant attempts to raise a twenty-second
point of error which asserts that the Texas death penalty statute unconstitutionally allows admission of
unadjudicated offenses without allocating the burden of proof to the prosecution and fails to require proof beyond a
reasonable doubt on the mitigation special issue. It is well settled that appellant is not entitled to hybrid
representation. Patrick v. State, 906 S.W.3d 481, 498 (Tex. Crim. App. 1995), cert. denied, 517 U.S. 1106 (1996).
3. The special issue which appellant challenges asked, "Is there a probability that the defendant, Bobby
James Moore, would commit criminal acts of violence that would constitute a continuing threat to society?"