IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






AP-74,643






CLINTON LEE YOUNG, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL FROM CAUSE NUMBER CR-27181


IN THE 385
TH DISTRICT COURT OF MIDLAND COUNTY






 Johnson, J., delivered the opinion of the Court in which Keller, P.J., Price,
Womack, Keasler, Hervey, Holcomb, and Cochran, JJ., joined. Meyers, J. did not
participate.


O P I N I O N




 On April 14, 2003, a jury convicted appellant of capital murder. Tex. Penal Code Ann. §
19.03. Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal
Procedure Article 37.071, sections 2(b) and 2(e), (1) the trial judge sentenced appellant to death. Art.
37.071 § 2(g). Direct appeal to this Court is automatic. Art. 37.071 § 2(h). Appellant raises thirty-four points of error. We affirm.

SUFFICIENCY OF THE EVIDENCE


 In his eleventh and thirteenth points of error, appellant contends that the evidence is legally
insufficient to support the jury's verdict of guilt on either of the theories under which he was
indicted. In reviewing the legal sufficiency of the evidence, this Court looks at all of the evidence
in the light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307 (1979).

 The first paragraph of the indictment alleged that appellant intentionally and knowingly
caused the deaths of Samuel Petrey and Doyle Douglas during different criminal transactions but
pursuant to the same scheme and course of conduct. The second paragraph alleged that appellant
intentionally and knowingly caused the death of Petrey during the course of committing the offenses
of kidnapping and robbery. If the evidence is sufficient to support one of the theories in the
indictment, we need not address the other theories. Kitchens v. State, 823 S.W.2d 256, 259 (Tex.
Crim. App. 1991). 

 A person commits the offense of capital murder if he intentionally or knowingly causes the
death of an individual while committing certain offenses, including kidnapping and robbery. Tex.
Penal Code § 19.03(a)(2). A person commits the offense of kidnapping if he intentionally or
knowingly abducts another person. Tex. Penal Code § 20.03. A person commits the offense of
robbery if he unlawfully appropriates the property of another person with the intent to deprive the
owner of the property and, with the intent to maintain control of the property, he intentionally or
knowingly causes bodily injury to another or places another in fear of bodily injury or imminent
death. Tex. Penal Code § 29.02. 

 Under the law of parties, as set out in the jury charge in this case, a person is criminally
responsible for the conduct of another if: 

 in the attempt to carry out a conspiracy to commit one felony, another felony is
committed by one of the conspirators, all conspirators are guilty of the felony actually
committed, though having no intent to commit it, if the offense was committed in
furtherance of the unlawful purpose and was one that should have been anticipated
as a result of the carrying out of the conspiracy.


Tex. Penal Code § 7.02(b).


 On November 24, 2001, appellant, Darnell McCoy, Mark Ray, and David Page decided to
drive to Longview to buy some marijuana. Because none of them owned a car, appellant asked
Douglas if he could borrow his car. Douglas refused, but offered to drive the group to Longview
himself. When they arrived at their destination, appellant shot Douglas in the head with a .22 caliber
semi-automatic handgun. Ray testified that appellant threatened the remainder of the group by
saying, "If y'all don't get him in the trunk, you're going to be like him." Ray assumed that appellant
meant that they would also be shot. Ray, McCoy, and Page put Douglas in the trunk.

 The group then got back in the car and appellant drove off. Appellant later told Ray that he
needed Douglas's car to go see his girlfriend. Appellant stopped the car in a remote wooded area
near a creek and ordered Ray, Page, and McCoy to take Douglas's body out of the trunk. The men
complied and dragged Douglas's body down to the creek while appellant smoked a cigarette. Page
testified that appellant told Ray that he was going to have to prove himself by shooting Douglas in
the head. Appellant got a pillow from the car and held it against Douglas's head which was face-down in the creek. Ray shot Douglas in the head once more. 

 Ray testified that appellant then drove to a gas station and told his companions that one of
them had to go to Midland with him to see his girlfriend because "[i]f y'all squeal, you know, by the
time I hear about it, your friend's going to be dead." Page volunteered to go, and appellant took Ray
and McCoy home. Appellant called his girlfriend, Amber Lynch, presumably to make arrangements
to meet her, and learned that her father, Bart Lynch, was with her. Page testified that appellant
realized that Bart would recognize Douglas's car because Douglas and Bart knew each other. Thus,
appellant looked for another car to steal in Weatherford, but was unsuccessful. 

 The two then drove to Eastland and stopped at a Brookshire Brothers grocery store to get
some gas. Petrey was walking back to his pick-up truck from the grocery store when appellant
abducted him at gunpoint. Appellant ordered Petrey into his truck and then drove off with Page
following in Douglas's car. Appellant later stopped at a rest area and telephoned Amber. Page
testified that appellant decided that they would slit Petrey's throat and "leave him somewhere." 

 Appellant got back in the truck, and Page continued to follow in Douglas's car until they
could find a location to abandon Douglas's car. Page testified that Petrey told appellant that he was
familiar with the area and knew of a place to hide Douglas's car. According to Page, Petrey was
compliant and helpful. Petrey directed them to another wooded remote area, and Page parked
Douglas's car in some bushes. Appellant then fired several shots into the car in an attempt to "blow
it up" but was unsuccessful.

 Appellant, Page, and Petrey then drove toward Midland. They made several stops and
eventually stopped at a Wal-Mart, where appellant ordered Petrey to buy a $500 assault rifle. 
Because of the waiting period, Petrey was not able to leave with the rifle. When they returned to the
truck, appellant called Amber again. Bart got on the phone with appellant and told him that he knew
what had happened to Douglas. Bart indicated that the police were looking for appellant and Page. 
He also indicated that Page's father knew about the situation and wanted Page to call him. Page then
called his father and, after speaking with him, told appellant that he needed to be dropped off so that
he could turn himself in. Appellant refused and instead drove to a "pump-jack site," where he told
Page that they needed to "get rid of all the evidence." 

 Page testified that Petrey was leaning up against his truck smoking a cigarette when appellant
walked up to him and said, "Sorry, Sam, you know too much. You got to die." Appellant then shot
Petrey twice. Some blood splashed on the bumper of Petrey's truck, so appellant ordered Page to
clean it off. The two then left in Petrey's truck. After discussing what to do next, Page finally
persuaded appellant to drop him off at an IHOP so he could turn himself in. (2)

 Viewing all of the evidence in the light most favorable to the verdict, we find that a rational
trier of fact could have found appellant guilty of the essential elements of capital murder beyond a
reasonable doubt. Jackson, 443 U.S. 307. Appellant's eleventh and thirteenth points of error are
overruled.

 In his twelfth and fourteenth points of error, appellant claims that the evidence is factually
insufficient to support the jury's verdict. Viewing the evidence without the prism of "in the light
most favorable to the prosecution," we find that appellant has not shown that the evidence is so weak
that the verdict is clearly wrong and manifestly unjust or that any contrary evidence is so strong that
the standard of proof beyond a reasonable doubt could not have been met. Zuniga v. State, 144
S.W.3d 477 (Tex. Crim. App. 2004). Appellant's twelfth and fourteenth points of error are
overruled.

 In his seventeenth point of error, appellant challenges the legal sufficiency of the evidence
to support the jury's findings on the future dangerousness issue. In reviewing the sufficiency of the
evidence at punishment, this Court looks at the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have concluded beyond a reasonable doubt that
appellant would probably commit criminal acts of violence that would constitute a continuing threat
to society. Jackson, 443 U.S. 307; Allridge, 850 S.W.2d 471.

 In addition to the evidence offered at the guilt phase, the state's punishment evidence showed
that on November 23, 2001, the day before the murders charged in this case, appellant burglarized
a sporting goods store in Diana, Texas, and stole several guns, and that on November 20, 2001,
appellant and several accomplices broke into the home of Carlos Torres Ramos with the intent to rob
him. Ramos was able to barricade himself in a closet where he had a .22-caliber rifle. Appellant and
his accomplices shot at Ramos through the closet door and, although Ramos was hit twice, he
survived. Ramos managed to get a shot off and wounded one of appellant's accomplices. When the
others retreated, appellant reloaded his gun and said, "Let's go back and kill the mother fucker."

 Appellant's girlfriend, Amber Lynch, testified that on September 8, 2001, she was riding in
a car with appellant when she learned from listening to a cell-phone call that appellant intended to
commit a robbery of a Dairy Queen. Appellant colluded with Barbara McCord, a Dairy Queen
employee, to fake the robbery while McCord was depositing the nightly receipts. The two did, in
fact, commit the robbery.

 The state also presented evidence that appellant committed assault and attempted to commit
sexual assault while he was confined at the Waco Home for Youth. Appellant and his roommate,
Nathan Wendell, were wrestling when a necklace that appellant was wearing broke. Appellant
became so enraged that he began to punch, slap, and hit Wendell. During the altercation, appellant
pulled his pants down and ordered Wendell to suck his penis. Wendell refused, turned his head, and
appellant's penis touched Wendell's ear. Wendell testified that the confrontation lasted for
approximately an hour. 

 Dr. Helen Short, a psychiatrist at the Waco Home for Youth, testified that appellant had nine
instances of violence in the 100 days he lived at the home. She testified further that he had been
diagnosed with attention deficit disorder, a conduct disorder, and a disorder of written expression. 
She considered him "very dangerous." 

 As a juvenile, appellant was adjudicated for two charges and committed to the Texas Youth
Commission in July 1998. He was released in February 2001. In the commission of unauthorized
use of a motor vehicle, appellant stole a neighbor's car and took the neighbor's children, who were
eight and twelve years old. He stole a gun from his mother and began driving to Louisiana with the
children, but was quickly caught. Appellant also served time for burglary of a building. During the
commission of that offense, appellant, his half-sister, and two friends stole alcohol, cigarettes, and
candy from a store. 

 Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could
have concluded beyond a reasonable doubt that appellant would probably commit future criminal
acts of violence that would constitute a continuing threat to society. Jackson, 443 U.S. 307; Allridge,
850 S.W.2d 471. Appellant's seventeenth point of error is overruled.

 In his eighteenth point of error, appellant challenges the factual sufficiency of the evidence
to support the jury's findings on the future dangerousness issue. We have repeatedly declined to
conduct such a factual sufficiency review and decline to do so again today. Chamberlain v. State,
998 S.W.2d 230, 233 (Tex. Crim. App. 1999). Appellant's eighteenth point of error is overruled.

 In his nineteenth and twentieth points of error appellant challenges the legal and factual
sufficiency to support the jury's findings on the second, or anti-parties, punishment issue, which
read,

 Do you find from the evidence beyond a reasonable doubt that the defendant,
himself, actually caused the death of the deceased individuals or he did not himself
actually cause the death of the deceased individuals, but he intended to kill the
deceased individuals or anticipated human life would be taken?


 In Wardrip v. State, 56 S.W.3d 588, 590 (Tex. Crim. App. 2001), we reiterated that this
Court has repeatedly declined to conduct a factual sufficiency review of the future dangerousness
special issue. We explained our rationale for this position as follows: 

 In McGinn [v. State, 961 S.W.2d 161, 169 (Tex. Crim. App.), cert. denied,
525 U.S. 967 (1998)], we stated that "future dangerousness is, in essence, an issue
of prediction," as opposed to "an issue of historical fact." [Footnote and citation
omitted.] We explained: "Findings of historical fact are either right or wrong at the
time of trial. But, predictions are not right or wrong at the time of trial - they may
be shown as accurate or inaccurate only by subsequent events." [Citation omitted.] 
We held that a [factual sufficiency] review of the future dangerousness issue is
impossible because it would require us to assign some evidence mitigating value and
to substitute our judgment for that of the jury. [Citation omitted.] We concluded that
the [legal sufficiency] standard should instead be used because it views the evidence
in the light that supports the jury's verdict and asks only whether circumstances are
present that a rational person somewhere could find a probability of future
dangerousness beyond a reasonable doubt. [Citation omitted.]


Wardrip, 56 S.W.3d at 590.

 However, we continued our analysis and said that the deliberateness issue, unlike future
dangerousness, requires a finding of historical fact that is either right or wrong at the time of trial. 
Id. at 590-91; see also Art. 37.071(b)(1). Therefore, we distinguished it from a determination of
future dangerousness because it involves an assessment of events that have already occurred. Id. 
We concluded that, because a factual sufficiency review of deliberateness would not present the
problems discussed in McGinn, then the deliberateness special issue could be reviewed for factual
sufficiency. Id. at 591. 

 Like the deliberateness issue, the anti-parties issue requires a finding of historical fact that
is either right or wrong at the time of trial. Thus, we hold that this Court can conduct a legal and
factual sufficiency review of this issue. See id.

 The evidence showed that appellant personally shot both victims, formulated the plan to get
a different vehicle, and repeatedly threatened his cohorts with severe consequences should they be
inclined to tell anyone of their escapades. This evidence is both legally and factually sufficient to
support the jury's finding that appellant, himself, actually caused the death of the victims and
intended to kill them. Appellant's nineteenth and twentieth points of error are overruled.

 In his twenty-first and twenty-second points of error, appellant challenges the legal and
factual sufficiency of the evidence to support the jury's finding on the mitigation special issue. This
Court does not review the sufficiency of the evidence to support the mitigation special issue. 
McGinn v. State, 961 S.W.2d 161, 166 (Tex. Crim. App. 1998). Appellant's twenty-first and twenty-second points of error are overruled.

VOIR DIRE

 In his sixteenth point of error, appellant contends that the trial court erred in granting the
state's challenge for cause of prospective juror Danie Lynn Roberts. We review the trial court's
ruling under an abuse of discretion standard and will not disturb the trial court's ruling if it is
supported by the record. Herron v. State, 86 S.W.3d 621, 629 (Tex. Crim. App. 2002). "We
examine the record as a whole to determine whether there is support for the trial court's ruling,
deferring to the trial judge who was in a position to see and hear the venireperson." Id. 

 When asked about her feelings regarding the death penalty, Roberts initially stated that she
did not have anything against the death penalty, but was unsure as to whether she had the right to
decide if someone should live or die. The prosecutor gave her several examples of cases in which
the death penalty was assessed and asked her if she agreed that the defendants in those cases
deserved the death penalty. In some instances she agreed; in others, she did not. She indicated that
in some cases the death penalty was "okay," but was reluctant to "have that on [her] hands." When
pressed further about rendering a death sentence, she stated, "I don't think I could do it." However,
she later stated, "If I was on a jury that the facts really added up to where that person deserved to die,
then I could probably [assess the death penalty]."

 During voir dire by defense counsel, Roberts was again asked whether she could answer the
questions in such a way that the death penalty would be assessed and she stated, "I really - couldn't
tell you." She added, "Until that moment arrives, I couldn't say. I really couldn't." Finally, the trial
judge asked Roberts the following:

 THE COURT: Ms. Roberts, let me ask you did I understand you to say that you did
not think you could envision any circumstance in which you could
assess the death penalty or vote in such a way as the death penalty
would be inflicted?


 [ROBERTS]: Not right now.


 The state challenged Roberts for cause. When granting the state's challenge, the trial judge
noted that Roberts initially vacillated in her responses, ultimately stating that she could not assess
the death penalty. The trial judge noted on the record that he recognized her "hesitancy and
demeanor" in evaluating her ability to serve on the jury. Because the record reflects that Roberts was
a vacillating juror, the trial court did not abuse its discretion in granting the state's challenge for
cause. See Granados v. State, 85 S.W.3d 217, 232-33 (Tex. Crim. App. 2002). Appellant's
sixteenth point of error is overruled. 

 In his thirty-fourth point of error, appellant asserts that Article 35.16(b)(1) is unconstitutional
because it establishes a challenge for cause when a potential juror expresses religious beliefs which
would preclude her from considering the death penalty as a sentencing option. He claims that
potential juror Stephanie Hinojos was improperly excluded from serving on the jury pursuant to this
statute. 

 Appellant's reasoning is flawed for two reasons. First, Article 35.16(b)(1) does not mention
religious beliefs. Rather, it provides that the state may challenge for cause a potential juror who "has
conscientious scruples in regard to the infliction of the punishment of death for a crime, in a capital
case, where the State is seeking the death penalty." Art. 35.16(b)(1). Second, the record reflects that
Hinojos was not struck because of her religious beliefs. During voir dire, Hinojos stated that under
no circumstances could she vote to give a defendant the death penalty. At the conclusion of
Hinojos's voir dire, the following occurred:

 THE COURT: Okay. What I think both sides are trying to find out, and I need to
know as the Judge, that the third question, you see the jury answers
yes or no to that according to the evidence, and we can't tell you what
the evidence is now, can't even give you a sneak preview of it, but
you understand that if the jury says yes to that third question, the
Judge is going to assess a life sentence to the Defendant?


 [HINOJOS]: Uh-huh.


 THE COURT: If the jury says no, the Judge is going to give the death penalty to the
Defendant.


 [HINOJOS]: Uh-huh.


 THE COURT: Is there any case where you could envision or consider voting no,
knowing that the Judge would assess the death penalty in that case?


 [HINOJOS]: No, I couldn't.


 THE COURT: No matter what the facts are, you could not vote no? 


 [HINOJOS]: As a person, I couldn't.


 THE COURT: Okay.


 [HINOJOS]: I couldn't live with that.


 THE COURT: All right. Any other questions counsel?


 [THE STATE]: State has none.


 [THE DEFENSE]: Is any of that based upon your religion as a Catholic?


 [HINOJOS]: No, it's based on just my beliefs.

Appellant's thirty-fourth point of error is overruled.

SUPPLEMENTAL JURY INSTRUCTION

 In points of error one through four, appellant challenges the trial court's submission of a
supplementary instruction to the jury at the punishment phase of trial. During their deliberations,
the jurors sent a note to the trial judge asking whether, with regard to the anti-parties issue, they were
required to find that appellant committed both murders in this case or only one. (3) The trial court sent
a written instruction to the jurors explaining that the first paragraph of the indictment alleged the
murders of two victims pursuant to the same scheme or course of conduct, while the second
paragraph alleged the murder of one victim committed during the course of committing kidnapping
and robbery. The trial court continued, 

 If your consideration of Issue No. 2 on punishment is as to Paragraph 1 of the
indictment, the death of two individuals is required to be found by the jury. If your
consideration is as to the second paragraph of the indictment, the death of an
individual, Samuel Petrey, is required.


 Appellant objected to this instruction on the grounds that it lessened the state's burden of
proof, that it violated his Sixth Amendment right to a fair trial, that it violated his Fifth and
Fourteenth Amendment rights to due process, and that it violated his Eighth Amendment rights
because the jury was required to find appellant was responsible for the death of two individuals. On
appeal, appellant claims that the instruction improperly coerced the jury to answer the second special
issue in the affirmative, that the instruction allowed the jury to answer the second special issue in
the affirmative without requiring all twelve jurors to answer "yes," that the instruction was an
improper comment on the weight of the evidence, and that the instruction prevented the jury from
"considering circumstances of the offense favorable to appellant that might have been considered
mitigating evidence." Because appellant's objections at trial do not comport with the claims he now
raises, he has failed to preserve those claims for appeal. Tex. R. App. P. 33.1. Appellant's first,
second, third, and fourth points of error are overruled.

IMPROPER JURY CONTACT

 In his fifth point of error, appellant claims that Sheriff Gary Painter improperly
communicated and fraternized with the jury during its deliberations on punishment. Specifically,
he claims that, during a break in the proceedings, presiding juror James Bobo approached Painter,
who was an acquaintance, and asked to speak with him after the trial was over. He claims further
that, during a lunch break, the sheriff accompanied the jury to a local restaurant and that his presence
improperly influenced the jury to set appellant's punishment at death.

 When a juror converses with an unauthorized person about the case, injury is presumed. Alba
v. State, 905 S.W.2d 581, 587 (Tex. Crim. App. 1995). However, the state may show that the case
was not discussed or it may rebut the presumption of harm by showing that nothing prejudicial to
the accused was said. Id. We defer to the trial court's resolution of historical facts and its
determinations concerning credibility and demeanor, and we view the evidence in the light most
favorable to the trial court's ruling. Quinn v. State, 958 S.W.2d 395, 401-02 (Tex. Crim. App.
1997). 

 At the hearing on appellant's motion for new trial, Painter testified that when Bobo
approached him, he said "When this is over and through with, I need to talk to you." Bobo did not
indicate what he needed to talk to him about, and there was no further discussion between the two. 
Without more, appellant has failed to show that his case was discussed or that anything prejudicial
to appellant was said. (4) Alba, 905 S.W.2d at 587. Appellant's bare allegation that Painter was
present at lunch does not warrant relief on appeal. Tex. R. App. P. 38.1. Appellant's fifth point of
error is overruled. 

MITIGATION

 In his eighth point of error, appellant argues that the jury "had no vehicle to consider and give
effect to petitioner's ADHD and other mitigating evidence." The jury in this case was given the
statutory mitigation instruction. See Art. 37.071 § 2(e)(1). The statutory instruction allows the jury
to consider all of the evidence presented at trial in answering the mitigation special issue. Cantu v.
State, 939 S.W.2d 627, 639-40 (Tex. Crim. App. 1996)). Appellant presented evidence of his
ADHD and other mitigating evidence, and the jury was given a vehicle through which it could
consider and give effect to that evidence. Appellant's eighth point of error is overruled.

GEESA INSTRUCTION

 In his twenty-third, twenty-fourth, and twenty-fifth points of error, appellant contends that
the trial court erred in denying his request to include the Geesa (5) definition of reasonable doubt in the
charge on punishment. In Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000), issued almost
three years before the trial in this case, we overruled that portion of Geesa which required a
definition of "beyond a reasonable doubt" to be included in the court's charge. In fact, we stated
"that the better practice is to give no definition of reasonable doubt at all to the jury." Id. at 573. 
Appellant's twenty-third, twenty-fourth, and twenty-fifth points of error are overruled. 

EXECUTION OF MINORS

 In his thirty-third point of error, appellant alleges that the Texas death-penalty scheme is
unconstitutional because it permits the execution of offenders aged eighteen to twenty-one. He
argues that the brain does not fully develop until the age of twenty-one, and therefore, offenders aged
eighteen to twenty-one are less culpable than offenders twenty-two years of age and older. Appellant
cites Roper v. Simmons, 125 S.Ct. 1183 (2005), as evidence that evolving standards of decency
require this Court to raise the age of offenders eligible for the death penalty. However, in Roper v.
Simmons, the United States Supreme Court held that the execution of offenders who were seventeen
years of age at the time they committed capital murder is unconstitutional. The Supreme Court did
not extend its ruling to offenders who were aged eighteen or over when they committed capital
murder, and we decline to do so. Appellant's thirty-third point of error is overruled. 

PREVIOUSLY REJECTED CLAIMS

 In his sixth and seventh points of error, appellant argues that the Texas death-penalty scheme
is unconstitutional because it allows prosecutorial discretion in deciding when to seek the death
penalty. We have previously rejected this claim. Ladd v. State, 3 S.W.3d 547, 574 (Tex. Crim. App.
1999); McFarland v. State, 928 S.W.2d 482, 510 (Tex. Crim. App. 1996). Appellant's sixth and
seventh points of error are overruled.

 In his ninth point of error, appellant claims that the trial court erred in failing to quash the
indictment because it failed to allege the special issues. In his tenth point of error, he argues that the
trial court erred in failing to instruct the jury that it could consider only facts alleged in the
indictment in answering the mitigation special issue. In his thirtieth point of error, he asserts that
Article 37.071 is unconstitutional because it places the burden of proof on the defendant to show
mitigating circumstances which would warrant a life sentence. We have previously rejected these 
claims. Rayford v. State, 125 S.W.3d 521, 533-34 (Tex. Crim. App. 2003), cert. denied, 125 S.Ct.
39 (2004). Appellant's ninth, tenth, and thirtieth points of error are overruled.

 In his fifteenth point of error, appellant claims that Texas Penal Code § 19.03(a)(2) is
unconstitutional because it fails to narrow the class of offenses for which the death penalty may be
sought. He argues that kidnapping should not be included in this section because "[v]irtually every
murder involves some restraint of the victim's movements and every murder by definition involves
using deadly force." We have previously rejected this claim. Rayford, 125 S.W.3d at 524-25. 
Appellant's fifteenth point of error is overruled. 

 In his twenty-sixth and twenty-seventh points of error, appellant asserts that the trial court
erred in failing to define the terms "probability," "criminal acts of violence," "continuing threat to
society," and "more likely than not" in the jury charge. We have previously rejected these claims. 
Chamberlain v. State, 998 S.W.2d 230, 237-38 (Tex. Crim. App. 1999). Appellant's twenty-sixth
and twenty-seventh points of error are overruled.

 In his twenty-eighth point of error, appellant argues that the trial court erred in failing to
instruct the jury that the state was required to prove beyond a reasonable doubt that there were
insufficient mitigating circumstances to warrant a life sentence. In his twenty-ninth point of error,
appellant contends that Article 37.071 is unconstitutional because it prohibits the trial court from
instructing the jurors regarding the consequences of their failure to agree on the special issues. In
his thirty-first point of error, he claims that the "12-10" rule of Article 37.071 violates the Sixth,
Eighth, and Fourteenth Amendments to the United States Constitution. We have previously rejected 
these claims. Resendiz v. State, 112 S.W.3d 541, 548-50 (Tex. Crim. App. 2003), cert. denied, 541
U.S. 1032 (2004). Appellant's twenty-eighth, twenty-ninth, and thirty-first points of error are
overruled.

 In his thirty-second point of error, appellant claims that the trial court erred in sustaining the
state's objection to appellant's attempt to impeach Page with the results of a polygraph examination. 
"It has long been the rule in this State that the results of a polygraph test are inadmissible for all
purposes." Nethery v. State, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985)(emphasis in original). 
The trial court's ruling sustaining the state's objection and excluding the results of the polygraph 
was proper. Appellant's thirty-second point of error is overruled.

 We affirm the judgment of the trial court.


 Johnson, J.

Delivered: September 28, 2005

En banc

Do not publish 
1. Unless otherwise indicated, all references to articles refer to the Texas Code of Criminal Procedure.
2. According to Page, they stopped at a couple of gas stations to ask for directions to the police station, but
were unable to find the station.
3. The note said, "Do you have to believe both or at least one?"
4. At the motion for new trial hearing, Painter testified that he accompanied the jurors to lunch because
additional security was needed. Earlier in the week, a threat had been phoned into the Midland County Attorney's
Office indicating that appellant was "going out with a bang." Painter, as head of courthouse security, thought it
prudent to accompany the jurors because of the attention this case received.
5. See Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991).