Affirmed and Opinion filed March 8, 2007








Affirmed and Opinion filed March 8, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00086-CR

____________

 

JUAN DOMINGO VELAZQUEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 248th
District Court

Harris County, Texas

Trial Court Cause No. 1028399

 



 

O P I N I O N

A jury found appellant Juan Domingo Velazquez guilty of
murder and assessed punishment at forty-five years= imprisonment.  In
three issues, appellant challenges the legal and factual sufficiency of the
evidence supporting the jury=s negative finding on the punishment issue
of sudden passion and claims he is entitled to a new trial because the court
reporter did not record some of the bench conferences during the trial.  We
affirm.

                                                  Background

Appellant shot and killed Rudolph Dorsey, an apartment
complex security guard, while Dorsey was on duty on May 24, 2005.  Stephanie
Jones and Krystal Simmons, who, along with appellant, lived in the apartment
complex, witnessed a large portion of the incident.  According to Jones, she
heard a gunshot around 10:00 p.m. and looked out her apartment window.  She saw
a man she later identified as appellant get into a car and drive away quickly
while screeching his tires.  He drove across the street to a convenience store
parking lot and stayed there in his car for five to ten minutes, after which he
drove back to the apartment complex in the same erratic manner.  A few minutes
later, Jones looked out her window and saw appellant, who was no longer in his
car, and Dorsey talking.  Appellant had a gun pointed at Dorsey, who was
pleading for his life.  Appellant then shot Dorsey twice, backed up, and shot
him four more times before running away.  Jones testified that her windows were
very thin and that she frequently overheard conversations outside her window. 
However, she neither heard nor saw any struggle or fight before appellant shot
Dorsey, and she did not observe Dorsey with a weapon or using force of any
kind.

Simmons also heard the first gunshot and looked out her
window.  She recognized appellant, and, while he was parked across the street,
Simmons came out from her apartment and talked to Dorsey.  Dorsey and Simmons
saw appellant return to the complex and begin working on his car.  Dorsey told
Simmons he was going to get appellant=s license plate
number.  After Dorsey got the information, he attempted to place a call on his
cell phone.  Simmons then saw appellant approach Dorsey, place a hand on him,
and shoot him twice.  Simmons ran back to her apartment and called 911.  As
Simmons ran, she heard scuffling and Dorsey begging appellant not to shoot him
again, followed by several more shots.  Like Jones, Simmons did not observe any
physical conflict or hear any threats or insults from Dorsey before appellant
shot him, and she believes she would have heard any such behavior, based on her
past experience with hearing things from her apartment.








When police arrived at the scene, Dorsey was dead.  In
addition to the bullet wounds, Dorsey=s knees and lower
leg were scraped.  Police found several spent shell casings nearby as well as a
wallet, watch, and flashlight.  Dorsey=s gun was still in
its holster, although it was raised slightly because the safety straps holding
it in the holster were unsnapped.  Dorsey=s gun was missing
no bullets, and no bullet was in the chamber ready to be fired.

After appellant was arrested, he gave a videotaped
statement to the police.  He claimed that after he came home from work, Dorsey Aconfronted@ him and hit him
in the parking lot.  Appellant became angry and went into his apartment. 
Appellant then discovered that his wife and children were not at home, despite
the late hour, further angering him.  His gun, which he had removed from his
car when he first arrived in the complex, was in his pants.  He went back
outside his apartment, where he again encountered Dorsey, who appellant claims
assaulted and pushed him.  Appellant stated that because of his anger at Dorsey
and his wife, Aat that instant in a moment of rage,@ he shot Dorsey.

Appellant did not testify during the guilt/innocense phase,
but he did testify during punishment.  He explained that he was working on his
car in the parking lot when Dorsey approached him and rudely began asking
questions and eventually insulted him with racial slurs.  Unlike in his
statement to the police, appellant did not testify that Dorsey hit him at this
point.  Appellant became angry but ignored Dorsey and went into his apartment for
ten to fifteen minutes, where he became further angered and frightened by his
family=s absence. 
Although he never told this to police, according to appellant, when he returned
outside, Dorsey approached him and again used racial slurs before assaulting
him with a flashlight, knocking him to the ground, and kicking him.  Appellant
was able to get to his feet and pull out his gun, telling Dorsey not to move. 
Appellant claims Dorsey tried to pull out his gun, and so appellant shot him. 
He then said AWhat have I done?@ and ran away.

The jury convicted appellant of murder, and this appeal
followed.








                                                      Analysis

                                                  Sudden
Passion

In his first two issues, appellant claims the evidence is
legally and factually insufficient to support the jury=s negative finding
on the issue of sudden passion.  At the punishment stage of a murder trial, Athe defendant may
raise the issue as to whether he caused the death under the immediate influence
of sudden passion arising from adequate cause.@  Tex. Penal Code Ann. ' 19.02(d) (Vernon
2003).  ASudden passion@ means Apassion directly
caused by and arising out of provocation by the individual killed.@  Id. ' 19.02(a)(2).  AAdequate cause@ means Acause that would
commonly produce a degree of anger, rage, resentment, or terror in a person of
ordinary temper, sufficient to render the mind incapable of cool reflection.@  Id. ' 19.02(a)(1).  If
the defendant proves the issue by a preponderance of the evidence, the offense
is reduced to a second degree felony.  Id. ' 19.02(d).

An attack on the legal sufficiency of the evidence to
support a negative finding on an issue for which the defendant has the burden
of proof involves two steps.  First, we must examine the record for evidence
that supports the negative finding while ignoring all evidence to the
contrary.  Cleveland v. State, 177 S.W.3d 374, 387 (Tex. App.CHouston [1st Dist.] 2005, pet. ref=d), cert.
denied, 126 S. Ct. 1774 (2006); Nolan v. State, 102 S.W.3d 231, 238 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  Second, if no
evidence supports the negative finding, we must examine the entire record to
determine whether it establishes the contrary proposition as a matter of law.  Cleveland,
177 S.W.3d at 387; Nolan, 102 S.W.3d at 238.








In conducting a factual‑sufficiency review of the
jury=s determination,[1]
we do not view the evidence Ain the light most favorable to the
prosecution.@  Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997).  Rather, we look at all evidence in a neutral light and will
reverse a conviction only if (1) the evidence of guilt is so weak that the jury=s verdict seems
clearly wrong and manifestly unjust or, (2) considering conflicting evidence,
the jury=s verdict, though
legally sufficient, is nevertheless against the great weight and preponderance
of the evidence.  Watson v. State, 204 S.W.3d 404, 414B15 (Tex. Crim.
App. 2006).  However, it is not enough that we may harbor a subjective level of
reasonable doubt to overturn a conviction that is founded on legally sufficient
evidence.  Id. at 417.  We cannot conclude that a conviction is Aclearly wrong@ or Amanifestly unjust@ simply because,
on the quantum of evidence admitted, we would have voted to acquit had we been
on the jury.  Id.  Nor can we declare that a conflict in the evidence
justifies a new trial simply because we may disagree with the jury=s resolution of
that conflict.  Id.  Rather, before ordering a new trial, we must first
be able to say, with some objective basis in the record, that the great weight
and preponderance of the (albeit legally sufficient) evidence contradicts the
jury=s verdict.  Id. 
Our evaluation should not intrude upon the fact‑finder=s role as the sole
judge of the weight and credibility given to the evidence and any witness=s testimony.  Cain,
958 S.W.2d at 407.  In conducting our review, we must also discuss the evidence
appellant claims is the most important in allegedly undermining the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).








Appellant claims he shot Dorsey in a moment of rage when
Dorsey tried to pull his gun after racially insulting and assaulting him.  In
support of his story that he and Dorsey fought before the shooting, appellant
points to the disarray of the crime scene, the scrapes on Dorsey=s legs, and the
position of Dorsey=s gun in its holster at the crime scene. 
Appellant also emphasizes that none of the witnesses saw the entire event and
that he is the only direct witness to his state of mind.  Even though Jones and
Simmons did not see the entire event, between the two of them they saw most of
it, and their accounts consistently contradict appellant=s story.  Both
testified that they heard no physical or verbal altercation and that appellant
shot Dorsey while Dorsey was pleading for his life rather than assaulting
appellant.  Simmons said she heard scuffling only after the first round of
shots appellant fired at Dorsey, and Dorsey never fired his weapon or even drew
it completely from its holster.  This evidence all relates to whether appellant=s actions were
caused by sudden passion from adequate cause, and the jury was free to assess
the credibility of the witnesses and choose between this conflicting evidence. 
See Trevino v. State, 157 S.W.3d 818, 822 (Tex. App.CFort Worth 2005, no pet.)
(noting that Athe jury was free to make its own determination of
appellant=s credibility and reject appellant=s version of
events if it did not believe he was telling the truth,@ including on the
issue of whether the deceased pulled a gun first, causing appellant to shoot
her in sudden passion); Dudley v. State, 992 S.W.2d 565, 569 (Tex. App.CTexarkana 1999, no pet.)
(finding factually sufficient evidence to support negative finding on sudden
passion issue based on conflicting evidence regarding the confrontation). 
Further, appellant=s statement to the police differed substantially
from his punishment-phase testimony, both in terms of when Dorsey allegedly
began the physical assault and Dorsey=s use of weapons
and racial insults, giving the jury further reason to disbelieve appellant.  See
Hernandez, 127 S.W.3d at 214 (noting that Aappellant=s changing story
about the circumstances of the killing@ gave the jury
reason to reject defendant=s claims of sudden passion).  Finally,
appellant testified that his anger was caused in large part by his wife and
family not being home so late at night.[2] 
Provocation by others than the deceased does not meet the definition of sudden
passion.  See id. at 213; Saldivar v. State, 980 S.W.2d 475, 506 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).

We conclude that some evidence presented at trial supports
the jury=s negative finding
on the sudden passion issue, and thus the evidence is legally sufficient.  See
Cleveland, 177 S.W.3d at 387, 390; Nolan, 102 S.W.3d at 238. 
Further, based on a neutral review of all the evidence, the evidence supporting
the jury=s finding is not
so weak as to render the verdict manifestly unjust or against the great weight
and preponderance of the evidence.  Thus, the evidence is also factually
sufficient to support the verdict.  See Watson, 204 S.W.3d at 414B15.  We overrule
appellant=s first and second issues.

                                 Failure
to Record Bench Conferences

In his third issue, appellant contends he is entitled to a
new trial because the court reporter did not record all of the bench
conferences.  Texas Rule of Appellate Procedure 13.1 provides that the official
court report must, Aunless excused by agreement of the
parties, attend court sessions and make a full record of the proceedings.@  Appellant claims
he was denied a meaningful appeal because the failure to record several bench
conferences[3]
means any error in the trial court=s rulings on those
issues was not preserved.  The State responds that this issue is not preserved
for review because appellant did not object to the lack of a court reporter at
these conferences.  We agree.








Appellant relies on Tanguma v. State, 47 S.W.3d 663,
673B74 (Tex. App.CCorpus Christi
2001, pet. ref=d) for the proposition that failure to record bench
conferences without agreement of the parties is reversible error.  However, the
Court of Criminal Appeals expressly disapproved of Tanguma in Valle
v. State, in which it held that a party must object in the trial court to
preserve any appellate complaint about the failure to record bench
conferences.  109 S.W.3d 500, 508B09 (Tex. Crim.
App. 2003) (noting also Awe disapprove of Tanguma=s holding that the
current rule dispenses with the requirement of an objection to preserve error@); see also
Rodriguez v. State, No. AP-74,399, 2006 WL 827833, at *6 (Tex. Crim.
App. Mar. 29, 2006) (not designated for publication) (ARule 13.1 . . .
does not relieve a party of its obligation to object to preserve error.@); Elec.
Bankcard Sys., Inc. v. Retriever Indus., Inc., No. 14-04-00452-CV, 2005 WL
3435294, at *2 & n.8 (Tex. App.CHouston [14th
Dist.] Dec. 15, 2005, no pet.) (mem. op.) (stating that Athe complaining
party must still object to the [failure to record bench conferences] to
preserve error@ and noting that the Corpus Christi Court of Appeals
has disavowed Tanguma in light of Valle, citing State v.
Herndon, 115 S.W.3d 231, 234 (Tex. App.CCorpus Christi
2003, pet. granted)).[4] 
Because appellant did not so object, any error is waived, and we overrule his
third issue.

We affirm the trial court=s judgment.

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Opinion filed March 8, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.

Publish C Tex. R. App. P. 47.2(b).









[1]  In Forbes v. State, we refused to conduct a factual sufficiency
review of a negative finding on sudden passion.  No. 14-98-01453-CR, 2000 WL
19156, at *2 (Tex. App.CHouston [14th Dist.] Jan. 13, 2000, pet. ref=d) (not designated for
publication).  We noted that the Court of Criminal Appeals had not extended
factual sufficiency review to any punishment issue and declined to do so
ourselves Awithout clear guidance@ from the court.  See id. 
The court provided that clear guidance the next year in Waldrip v. State,
which held that factual sufficiency review is appropriate on punishment issues
involving a finding of historical fact, such as whether the defendant acted
deliberately, rather than those involving a subjective prediction, such as
future dangerousness.  56 S.W.3d 588, 590B91 (Tex. Crim. App. 2001).  The sudden passion issue
involves such a historical finding, i.e., whether the defendant acted with
sudden passion from adequate cause.  Thus, this court, as have other courts,
has held that factual sufficiency review is available for a negative finding on
sudden passion.  See Reyes v. State, No. 14-04-00805-CR, 2005 WL
2787220, at *1B2 (Tex. App.CHouston [14th Dist.] Oct. 27, 2005, pet. ref=d) (mem. op; not designated for
publication); Hernandez v. State, 127 S.W.3d 206, 211B12 & n.2 (Tex. App.CHouston
[1st Dist.] 2003, pet.
ref=d) (collecting cases); see also
Harrell v. State, 65 S.W.3d 768, 772 (Tex.
App.CHouston [14th Dist.] 2001, pet. ref=d) (conducting factual sufficiency review of negative
finding on punishment issue of voluntary release in a safe place in a
kidnapping case).  Therefore, we will conduct a factual sufficiency review.





[2]  In fact, appellant answered AYes@ in response to
the question, AMost of your angerCI
guess all of your anger was because of the situation with your wife, wasn=t it?@





[3]  Although appellant suggests there were five
unrecorded bench conferences, the record reveals only one conference that could
even potentially be significant.  For this conference, the trial court called
the parties to the bench during testimony on its own, rather than in response
to any objection or request from a party.  The context does not reveal the
substance of this discussion.  For the other four, two were in fact recorded,
and the other two, based on the context, appear to have dealt with the timing
of taking breaks.





[4]  Appellant argues that Valle does not apply because he was
unaware that the conferences were not being recorded.  Even assuming such an
exception should be recognized, appellant failed to cite any evidence to
support his factual assertion that he was unaware, and he failed to develop
such a record with a motion for new trial.