

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-77,051

### WARREN DARRELL RIVERS, Appellant

### v.

### THE STATE OF TEXAS

### ON DIRECT APPEAL FROM CAUSE NO. 0475122
### IN THE 228TH JUDICIAL DISTRICT COURT
### HARRIS COUNTY

**HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, RICHARDSON, YEARY, NEWELL, KEEL, and WALKER, JJ., joined. ALCALA, J., concurred.**

### O P I N I O N

In 1988, Warren Darrell Rivers was convicted of capital murder and sentenced to death for intentionally causing the death of eleven-year-old C.N. while in the course of committing or attempting to commit aggravated sexual assault. TEX. PENAL CODE § 19.03(a)(2). We affirmed the 1988 conviction and sentence. *Rivers v. State*, No. AP-

70,776 (Tex. Crim. App. Apr. 14, 1993) (not designated for publication). Following a grant of federal habeas corpus relief, the trial court held a new punishment hearing in November 2014. *Rivers v. Quarterman*, 661 F. Supp. 2d 675 (S.D. Tex. Sept. 30, 2009). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.0711, §§ 3(b) and 3(e), the trial judge sentenced Rivers to death. TEX. CODE CRIM. PROC. art. 37.0711, § 3(g).[1] Direct appeal to this Court is automatic. *Id.* art. 37.0711, § 3(j). Rivers raises seven points of error.[2] After reviewing his points of error, we find them to be without merit. Consequently, we affirm the trial court's judgment sentencing Rivers to death.

## FACTUAL SUFFICIENCY—DELIBERATENESS

In point of error three, Rivers contends that the evidence was factually insufficient to support the jury's affirmative answer to the deliberateness special issue, which asks "whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased

---

[1] Unless otherwise indicated, all future references to Articles refer to the Code of Criminal Procedure.

[2] Rivers has failed to comply with Rule 38.1(b) of the Texas Rules of Appellate Procedure because, even though his brief includes a table of contents, that table lists his issues or points of error simply as "APPELLANT'S FIRST POINT OF ERROR," "APPELLANT'S SECOND POINT OF ERROR," and so forth. TEX. R. APP. P. 38.1(b) (stating that the table of contents "must indicate the subject matter of each issue or point, or group of issues or points"). Rivers has also failed to comply with Rule 38.1(f) because he did not include an "Issues Presented" section nor did he concisely state "all issues or points [he has] presented for review." *Id.* at 38.1(f). Nonetheless, in the interest of justice we have attempted to discern his claims, but to the extent that we cannot, we reject his others as inadequately briefed. *Id.* at 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011).

or another would result[.]"[3] TEX. CODE CRIM. PROC. art. 37.0711, § 3(b)(1). However, we do not review the evidence supporting the jury's answer to the deliberateness special issue for factual sufficiency.[4] *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Point of error three is overruled.

## LEGAL SUFFICIENCY—FUTURE DANGEROUSNESS

In point of error five, Rivers alleges that the evidence was legally insufficient to support the jury's affirmative answer to the future-dangerousness special issue. He argues that the evidence presented at his second punishment trial showed that his "victims are a specific, vulnerable subset of society" (i.e., children) to whom he will not have access in prison. Relying on our decision in *Berry v. State*, 233 S.W.3d 847 (Tex. Crim. App. 2007), he asserts that the evidence was therefore insufficient to show that he would be a danger in prison society, which consists of only adults. Rivers's argument has no merit.

The future-dangerousness special issue requires the jury to determine "whether there is a probability that the defendant would commit criminal acts of violence that

---

[3] Rivers does not contend that the evidence was legally insufficient to support the jury's affirmative answer to the deliberateness special issue.

[4] Rivers relies on two cases from this Court to argue that the evidence supporting a jury's affirmative answer to the deliberateness special issue may be reviewed on appeal for factual sufficiency: *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and *Wardrip v. State*, 56 S.W.3d 588 (Tex. Crim. App. 2001). It is true that, "[i]n *Clewis*, we established 'the proper standard of review for factual sufficiency of the elements of the offense.'" *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). And, "[i]n *Wardrip*, we held that 'the deliberateness special issue may be reviewed for factual sufficiency using the *Clewis* standard.'" *Id.* But Rivers fails to acknowledge that we later "overruled *Clewis* and in effect, overruled the *Wardrip* factual-sufficiency holding as well." *See id.* (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)).

would constitute a continuing threat to society[.]" TEX. CODE CRIM. PROC. art. 37.0711, § 3(b)(2). In deciding that special issue, the jury is entitled to consider all of the evidence admitted at both the guilt-innocence and punishment phases of trial. *Devoe v. State*, 354 S.W.3d 457, 462 (Tex. Crim. App. 2011). The circumstances of the offense and the events surrounding it may be sufficient in themselves to sustain an affirmative answer to the future-dangerousness special issue. *Id.*; *Hayes v. State*, 85 S.W.3d 809, 814 (Tex. Crim. App. 2002). An escalating pattern of violence or disrespect for the law may also support a finding of future dangerousness. *Swain v. State*, 181 S.W.3d 359, 370 (Tex. Crim. App. 2005); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

We review all of the evidence in the light most favorable to the jury's finding. *Buntion v. State*, 482 S.W.3d 58, 66 (Tex. Crim. App. 2016); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Assessing the evidence and all reasonable inferences from it in this light, we determine whether any rational trier of fact could have found beyond a reasonable doubt that there is a probability the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *Buntion*, 482 S.W.3d at 66; *Williams v. State*, 273 S.W.3d 200, 213 (Tex. Crim. App. 2008). The future-dangerousness special issue focuses upon the defendant's character for violence and his internal restraints, asking whether he would constitute a continuing threat whether in or out of prison. *Coble v. State*, 330 S.W.3d 253, 268–69 (Tex. Crim. App. 2010).

Viewed in the light most favorable to the jury's finding, the evidence shows that,

on the evening of May 3, 1987, the then-twenty-year-old Rivers lured the eleven-year-old C.N. to a vacant house. While the boy was alive, conscious, and resisting, Rivers inserted the unlubricated end of a broom handle at least nine inches into C.N.'s rectum, abrading and lacerating his anus and perforating his colon. Rivers also severely beat C.N. with a broom stick, strangled him, and stabbed him with a knife three times in the back and once in the chest. Although one of the stab wounds to C.N.'s back was superficial, the remaining stab wounds were 3½ inches deep. The deep stab wounds to C.N.'s back hit and sliced one of his kidneys in half. These were fatal injuries, but not immediately so. C.N. died from the deep stab wound to his chest, which penetrated his heart and was almost instantly fatal.

During his assault on C.N., either before or after C.N.'s death, Rivers ejaculated onto a washcloth that was found near C.N.'s naked and battered body. A witness who saw Rivers a few hours after he assaulted and murdered C.N. testified that his demeanor was "happy" and "prideful," as if he had "[done] something good." The following day, Rivers's demeanor was similarly elated and celebratory.

In addition to the facts of the instant offense, the State presented evidence of Rivers's criminal record and bad acts preceding C.N.'s murder, which we summarize as follows. Rivers was the largest male student at his middle school, and he had an unpredictable temperament which manifested itself in a frequently changing emotional state. He bullied smaller students into submitting to his demands, disrupted class,

disrespected and intimidated teachers and staff members, and was suspended from school after an incident in which he physically threatened a female teacher.

When he was fifteen years old, Rivers lured an eight-year-old boy who lived in the same apartment complex into an empty apartment. He then physically and sexually assaulted the boy. In a separate incident on that same day, Rivers lured the boy's six-year-old brother into an empty apartment and sexually assaulted him.

For his sexual assault of the eight-year-old boy, Rivers was adjudicated delinquent for aggravated sexual assault of a child and placed in the custody of the Texas Youth Commission (TYC). While at TYC, Rivers, who possessed an average-range IQ, demonstrated the ability to act appropriately when he wished to do so. Despite this, he physically intimidated and bullied other juveniles, became a "negative leader," and was frequently the subject of disciplinary action. Among other misconduct, Rivers stole food from other juveniles and persuaded the residents of his dormitory to fight the residents of another dormitory. Rivers did not typically take responsibility or express remorse for his actions, and he became belligerent and surly when punished for them. Although twelve months was the typical length of a stay in TYC, Rivers remained there for twenty months because of his bad behavior.

Following Rivers's release from TYC and approximately a month before Rivers killed C.N., police officers responded to a disturbance involving Rivers and his mother. As the officers arrived at the house, they observed that Rivers was in a rage, screaming,

"Where is my knife? I'm going to kill that nigger. Where is my knife?" Rivers responded belligerently when the officers tried to calm him, and he continued searching for his knife. After grabbing something from a kitchen drawer, R\ivers darted towards the front door, prompting one of the officers to draw his service weapon. The officer did not fire his weapon, however, because Rivers's mother jumped in front of him. Rivers shoved his screaming mother out of the way, after which the officers attempted to subdue him because they believed that he had stabbed his mother. Rivers wrestled and fought the officers for more than a minute before back-up officers arrived, at which point he ceased struggling. The officers arrested Rivers for assaulting his mother and for resisting arrest. Upon searching him, the officers found a buck knife in the side of his shoe and a tear gas gun in his jacket pocket.

The facts of the instant offense, Rivers's criminal history, and other evidence showing his lack of remorse and escalating pattern of violence and disrespect for the law are sufficient to support the jury's affirmative answer to the future-dangerousness special issue. *Devoe*, 354 S.W.3d at 462; *Swain*, 181 S.W.3d at 370; *see Young v. State*, 283 S.W.3d 854, 864 (Tex. Crim. App. 2009) (noting that evidence that the defendant had previously committed aggravated sexual assault supported the jury's finding of future dangerousness). We have also recognized that a stabbing death is particularly brutal. *King*, 953 S.W.2d at 272. "[A] knife is a weapon which by its very nature, forces the user to be in such close proximity to his victim that he is often touching him or comes into

contact with him on each blow." *Id.* (quoting *Martinez v. State*, 924 S.W.2d 693, 696 (Tex. Crim. App. 1996)). Further, "the character of the weapon is such that several thrusts are often utilized in order to ensure death—each additional thrust potentially indicating to any rational juror that such a personal act requires a wanton and callous disregard for human life." *Id.*

The State also presented evidence that Rivers's character for violence had not changed. *See Buntion*, 482 S.W.3d at 67. Writings found in his cell in 2006, 2010, and 2011 were filled with violent sexual ideations, including the anal rape of an eight-year-old girl, the gang rape of another girl, and scenes featuring the domination, torture, and murder of children. This evidence supported a finding that the forty-seven-year-old Rivers still possessed the same unwholesome sexual interest and character for murderous brutality toward children that he did at ages fifteen and twenty. *See Coble*, 330 S.W.3d at 269–70.

Other evidence in the record suggested that Rivers's continuing character for violence was not limited to children. While he was in prison following his original capital-murder trial, Rivers threatened to injure or kill correctional officers, participated in a conversation with other inmates about planning the rape of a female correctional officer, created disturbances, and violated other prison rules. While he was in the Harris County Jail awaiting his second punishment trial, Rivers assaulted an older, physically smaller, shackled inmate for no apparent reason. Rivers, who was restrained by only

handcuffs, headbutted the inmate, causing the inmate to fall to the ground. He then repeatedly kicked the inmate, taking advantage of the inmate's more limited range of movement. When ordered by a jail guard to stop the assault, Rivers pretended that he did not know what the guard was talking about.

Rivers's reliance on *Berry*, in which we found the evidence insufficient to establish the defendant's future dangerousness, is misplaced. *See Berry*, 233 S.W.3d at 864. The evidence in Berry's case showed that her victim pool was extremely limited (i.e., confined to a subset of her own children who had been fathered by someone other than her preferred mate), she had never been violent in any other context, and she had no criminal record. *Id.* at 863–64. The evidence also suggested that there was a very low probability that she would have any more children if sentenced to life in prison. *Id.*

Rivers's case is distinguishable in that he had a significant prior criminal history, which included aggravated sexual assault of a child, and he demonstrated an escalating pattern of violence and disrespect for the law. *See Devoe*, 354 S.W.3d at 462; *Swain*, 181 S.W.3d at 370. The evidence further supported a finding that Rivers "is dangerous to a broader range of potential victims than only" children. *See Estrada v. State*, 313 S.W.3d 274, 283 (Tex. Crim. App. 2010) (distinguishing *Berry*).

In sum, the evidence presented at trial is sufficient to support the jury's affirmative answer to the future-dangerousness special issue. Point of error five is overruled.

**PRIOR DEATH SENTENCE**

In point of error one, Rivers draws our attention to the following statement by the Supreme Court in *Kansas v. Marsh*, 548 U.S. 163, 173–74 (2006): "[A] state capital sentencing system must: [1] rationally narrow the class of death-eligible defendants; and [2] permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." *Id*. (rejecting a facial constitutional challenge to a Kansas death-penalty statute requiring the imposition of the death penalty when the sentencing jury determines that aggravating evidence and mitigating evidence are in equipoise). Rivers specifically focuses on the second of the foregoing requirements. *Id.* According to him, under *Marsh*, his Fourteenth Amendment right to due process and his Eighth Amendment right to be free from cruel and unusual punishment were violated because the jury was made aware that he had previously received the death penalty for C.N.'s capital murder.

To the extent Rivers is attempting to mount a facial constitutional challenge to Texas's death penalty statute on the grounds that the statute does not permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime, his argument has no merit. *See Mosley v. State*, 983 S.W.2d 249, 263–64 & n.18 (Tex. Crim. App. 1998) (op. on reh'g).

To the extent Rivers is attempting to raise an as-applied constitutional challenge to Texas's death penalty statute, he has inadequately briefed this point of error:

> An appealing party's brief must contain a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Failure to provide substantive legal analysis—"to apply the law to the facts"—waives the point of error on appeal. If the appealing party fails to meet its burden of adequately discussing its points of error, this Court will not do so on its behalf.

*Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in the refusal to grant petition for discretionary review) (footnotes omitted); *see Lucio*, 351 S.W.3d at 896; *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003).

Rivers is correct that we have cited *Marsh* for the proposition that "'a state capital sentencing system must . . . permit a jury to render a reasoned, individualized sentencing determination . . . .'" *See Coble*, 330 S.W.3d at 269 (quoting *Marsh*, 548 U.S. at 173–74). However, Rivers does not explain how the jury's alleged awareness of his former death sentence made it unable to render a reasoned, individualized sentencing determination. Thus, Rivers has failed to apply the law to the facts as the appellate rules require. *See* TEX. R. APP. P. 38.1(i); *Lucio*, 351 S.W.3d at 896; *Swearingen*, 101 S.W.3d at 100.

However, in the interest of justice, we have examined the record and have found no references to Rivers's prior death sentence. The passages cited by Rivers include only discussions that he had already been found guilty and that, if asked to serve on the jury, the veniremen would have to assess only Rivers's punishment. Even if we assume that the instances Rivers complains about could possibly be fairly characterized as direct references to his prior death sentence—or that the jury would have necessarily and reasonably understood them as such—the complained-of instances did not so infect

Rivers's punishment retrial with unfairness that they rose to the level of a due process violation or misled the jury regarding its sentencing role. *See*, *e.g.*, *Muniz v. Johnson*, 132 F.3d 214, 223–24 (5th Cir. 1998) ("[T]hese comments were isolated enough that they did not mislead the jury in its sentencing role or diminish its sense of responsibility in considering the death penalty."). Point of error one is overruled.

## MOTION TO INCLUDE LIFE WITHOUT PAROLE

In point of error two, Rivers alleges that the trial court violated his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution when it denied his motion to include life without parole as a sentencing option and instead tried him pursuant to the provisions of Article 37.0711.[5] However, "[t]he trial court did not err by refusing to apply a punishment provision that, by its own terms, does not apply to an offense committed in" 1988. *See Buntion*, 482 S.W.3d at 105. Rivers also fails to acknowledge that "we have repeatedly rejected claims that the applicable sentencing scheme is unconstitutional for failing to provide the jury with the sentencing option of life without parole." *Id.* (citing *Luna v. State*, 268 S.W.3d 594, 609 (Tex. Crim. App. 2008)). Point of error two is overruled.

## BRAIN DAMAGE

In point of error four, we understand Rivers to make two claims. First, he alleges

---

[5]Article 37.071 governs death-penalty cases when the defendant was convicted after September 1, 1991. Because Rivers was convicted of capital murder in 1988, Article 37.0711 governs his case. *Compare* TEX. CODE CRIM. PROC. art. 37.071, *with id.* art. 37.0711.

that he is categorically exempt from execution under the Supreme Court's holding in *Roper v. Simmons*, 543 U.S. 551 (2005), due to his age at the time of the offense. In *Simmons*, the Supreme Court held that the Eighth and Fourteenth Amendments "forbid[] imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." *Id.* 543 U.S. at 578. However, the record in this case shows that Rivers was twenty years old when he committed the instant offense. Thus, *Simmons* is inapplicable.

Second, Rivers argues that he is categorically exempt from execution under the Supreme Court's holding in *Atkins v. Virginia*, 536 U.S. 304 (2002), because even though he is not intellectually disabled, he suffers from brain damage that reduces his moral culpability and makes a death sentence a disproportionate punishment. In *Atkins*, the Supreme Court held that the Eighth Amendment prohibits the execution of intellectually-disabled offenders. *Id.* at 321. To the extent Rivers contends that the rule announced in *Atkins* extends to, or should extend to, individuals who have brain damage but are not intellectually disabled, he has not supported his claim with any persuasive authority. *See Soliz v. State*, 432 S.W.3d 895, 903–04 (Tex. Crim. App. 2014) (concluding that the defendant had failed to show an emerging national consensus in favor of prohibiting the execution of non-intellectually-disabled but brain-damaged adults convicted of capital murder). Furthermore, in asking us to evaluate the factual sufficiency of the evidence

supporting the jury's affirmative answer to the deliberateness special issue, he merely re-urges his third point of error, which we have already overruled.

We also decline to extend *Atkins*'s categorical exemption to non-intellectually-disabled but brain-damaged adults. "At the punishment phase of a death-penalty case, evidence of brain damage . . . is relevant evidence that may be considered by the jury along with other relevant evidence. The weighing of this type of evidence is a subjective determination undertaken by each individual juror." *Id.* at 904. In this case, the record shows that the jurors heard Rivers's evidence of brain damage, as well as the other punishment evidence, and they appear to have made a normative judgment that the evidence did not warrant a life sentence. *Id.* We "will not second-guess the jury's determination." *Id.* Point of error four is overruled.

## ADMISSION OF WRITINGS

In point of error six, Rivers contends that the trial court erred by admitting evidence of writings found in his cell. As discussed in our analysis of point of error five, these writings were filled with violent sexual ideations. Rivers argues that the danger of unfair prejudice substantially outweighed the probative value of this evidence. He asserts that the writings were thus inadmissible under Texas Rule of Evidence 403. This claim has no merit.

When an appellant complains that a trial court erred under Rule 403 by admitting his writings, we review the ruling for an abuse of discretion. *See Green v. State*, 934

S.W.2d 92, 104 (Tex. Crim. App. 1996). We will not find an abuse of discretion unless the trial court's decision fell outside the zone of reasonable disagreement. *Id.*

Here, the trial court did not abuse its discretion by admitting the writings into evidence. The record shows that the State introduced Rivers's writings as evidence of his character for violence, which was relevant to his future dangerousness. *Coble*, 330 S.W.3d at 268–69. In similar circumstances, we have determined that the danger of unfair prejudice from such evidence did not outweigh its probative value to show future dangerousness. *See Green*, 934 S.W.2d at 104 (concluding that the defendant's description of himself as "trigger happy" was suggestive of future dangerousness and not unfairly prejudicial under Rule 403); *see also Corwin v. State*, 870 S.W.2d 23, 35 (Tex. Crim. App. 1993) (concluding that the jury could infer facts about the defendant's character for violence from his drawing of a large green monster holding a bloody axe and a woman's scalp). Point of error six is overruled.

## DELIBERATENESS SPECIAL ISSUE

In point of error seven, Rivers alleges that the deliberateness special issue, found in Article 37.0711, § 3(b)(1), is void for vagueness under *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court held that 18 U.S.C. § 924(e)(2)(B)—the "residual clause" of the federal Armed Career Criminal Act of 1984 (ACCA)—is void for vagueness.[6] *See Johnson*, 135 S. Ct. at 2555–57, 2563. Rivers asserts that, by holding the

---

[6] In *Johnson*, the Supreme Court specifically considered the ACCA's definition of "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that

ACCA's residual clause to be void for vagueness, the Supreme Court "ma[de] it clear that statutory challenges do not have to be consigned to the dungeons of analysis when they offend the due process clause due to poor drafting." Rivers does not otherwise explain why *Johnson*, a decision involving a provision of federal statutory law, has any bearing on the constitutionality of Texas's deliberateness special issue. Accordingly, point of error seven is inadequately briefed. *See* TEX. R. APP. P. 38.1. In addition, we have previously rejected the same or similar arguments alleging that Article 37.0711 § (3)(b)(1) is void for vagueness. *See*, *e.g.*, *Chamberlain v. State*, 998 S.W.2d 230, 237–38 (Tex. Crim. App. 1999). To the extent Rivers asks us to revisit the issue, we decline to do so. Point of error seven is overruled.

Having considered Rivers's points of error and finding them to be without merit, we affirm the judgment of the trial court.

Delivered: December 20, 2017

Do Not Publish

---

"(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" *See Johnson*, 135 S. Ct. at 2555 (emphasis in original) (citing 18 U.S.C. § 924(e)(2)(B) and identifying the italicized language as the ACCA's "residual clause").